## PACKWOOD *v.* DORSEY.

In an action for the slander of title to property judgment may be rendered ordering the defendant to institute, within a certain period, a suit to establish his pretensions to the property, and this judgment, on the failure of the defendant to comply with it, will stand to the plaintiff as a perpetual default of the defendant; but the court has no power to fix a term within which the defendant must set forth his title or institute suit, under the penalty of being forever after precluded from asserting his claims.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *A. Hennen,* for the plaintiff. This action is founded upon the law, *Diffamari,* Justinian Code, lib. 7, tit. 14, l. 5, and not upon Partida 3, t. 2, l. 46 ; though the latter is a mere translation of the former. Such it is stated to be in 2 Elizondo's Practicia Universal Forense, p. 136, ed. 1787. Gregorio Lopez, in his commentary upon the above law of the Partida, states that it has been derived from the same source. In fact it has been the law of all the nations of Europe where the civil law prevails. It is as old as the time of Azo, who wrote a century before the compilation of the Partidas, in 1242. Summa Azonis, p. 722, 726. It is true that this law originally referred only to cases of liberty, and gave the right to every freeman ("ingenuus") to institute suit against any one defaming his "status," or rights to liberty. But it has been extended by analogy to cases affecting real or immovable property ; and every man in possession of real estate is enabled to institute this suit against another

claiming any right or title to it. The form of conducting such suit may vary among the different nations of Europe, but the form of the petition, the manner of conducting the suit, and all the incidents connected with it, are copiously laid down in the books of practice used in Spain. See 2 Elizondo, 135, 137. Paz, Praxis, tom. 3, p. 82, 84. Villadiego, p. 335, 387. Perez, tom. 1, p. 596. Prælectiones in Cod. lib. 7, tit. 14. Corvini Jurisprudentiæ Romanæ Summarium, 510, in Cod. lib. 7, tit. 14. 4 Merlin's Répertoire, (verbo Diffamari) 586. Leyser, tom. 2, p. 138, specimen 81. Meditations ad Pandectas. 6 Mulleri Promptuarium, p. 161, verbo, Provocatio ex lege Diffamari. Voët, in Pand. lib. 5, tit. 1, nos. 21, 22. In the english courts of chancery a remedy analogous to this of the civil law is found in their bills of peace. 2 Story's Eq. Jurisp., p. 174, 181, ss. 850, 860.

The principles laid down by the civilians on this subject may be found in 2d Leyser, p. 142. " * * * testanturque, D. D. tantum non omnes in hoc processu pro diffamante haberi, qui jus sibi alquod contra alterum asserit seu publice hoc seu privatim fiat. Omnis ergo inquietatio diffamatio est. Ita Barbosa in Thesauro, lib. 4, cap. 32, § 3. Quoties, inquit, alicujus interest defendi famam, bona, possessionem, remedium L. Diffamari obtinet, ideo comparatum, ut talia serventur ab omni inquietatione secura." This action can be maintained although no injury has resulted from the act, the object being principally to quiet the title. "Provocatio ex L. Diffamari institui potest, tametsi diffamatio injuriam nullam contineat." 6 Mulleri Promptuarium, p. 164, n. 10. " Nam ut injuria diffamationi insit, necesse non est." Leyser, Meditat. ad Pandect. vol. 2, p. 139.

It is admitted that the common law remedy of an action for the slander of title does not go as far as the civilians have carried the above remedies. But the common law has no binding force on us. And though the same be true of the civil law, the principles of the civilians are more conformable to natural law and reason, and more consonant with equity. And, if all the spanish and civil law has been repealed, yet our courts are required, " in civil matters, when there is no express law, to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages where positive law is silent." C. C. art. 21. Now the usages of the civil law, as interpreted in Spain and other nations of Europe, have been generally received in Louisiana. And if we appeal to natural law and reason on this subject, there can be nothing inequitable in the manner of the proceedings which the civilians have pointed out for the redress of such injuries as those set forth in the plaintiff's petition. Admitting that the roman and spanish laws have been fully repealed, " we presume," says Judge Mathews, " it cannot be viewed as a judicial offence to resort to them in aid of interpretation." *Lewis* v. *Casanave,* 6 La. 442. The same judge, afterwards in *Boismare* v. *His Creditors,* 8 La. 319, said that " the repeal of these laws by the act of 1828 as laws absolutely obligatory in the administration of justice ought not to destroy the force of principles which were established by them, when these principles are found to comport with justice." And the court, in the judgment of the case, proceeded on a very rigorous positive law of Spain, to condemn the defendant as guilty of fraud, because by the spanish law all insolvent debtors are presumed fraudulent.

To what extent the spanish and roman laws were repealed by the act of 1828 has not been precisely fixed by the decisions of the Supreme Court. Mathews, J., in delivering the opinion of the court, in 6 La. 441, says of this repealing law: " The clause of repeal is sweeping in its effects, *tremendously sweeping ;* and an unwise or inconsiderate interpretation on the part of the courts of justice would have left the community without any civil laws except those contained in the Louisiana Code and Code of Practice, an evil so great as to be irreconcilable with the wisdom that must be conceded to our legislature."

In the case of *Carlin* v. *Stewart,* 2 Rob. 76, cited by defendant's counsel, the court considered it "useless to inquire whether the repeal of the civil laws extended to any other but statutory laws," and the question of slander of title was not even hinted at, the suit relating simply to slander of the person. The case of *Caldwell* v. *Hennen,* 5 La. 24, also cited by defendant's counsel was the same in its method of proceeding as that of *Heerman* v. *Livingston,* 9 M. R. 656, and although instituted subsequently to the repealing act of 1828, neither the counsel nor the court called in question the correctness and legality of the proceeding.

The counsel for the defendant urges that the judgment in this case as-

.PACKWOOD
v.
DORSEY.

sumes a legislative power of giving a prescription against the action of defendant. No such power was intended to be assumed by the court in this judgment. The defendant was indulged, in consequence of his willingness and intention to institute a suit, with time for that purpose. The plaintiff might, with great propriety, complain that the judgment granted the defendant too much, as the action had already been pending against him nearly a year.

It is clear that the suit which the defendant was ordered to institute, was that mentioned in the plaintiff's petition, viz: that of his personal claim upon the property of the plainiiff. The judgment can have reference only to the plaintiff's demand, and the defendant could not be compelled under it to do more than the plaintiff asked. The defendant was sued individually, and not as tutor of his children, and it was to preclude his individual action only, that the suit was instituted.

To recover damages for a slander of title, proof of malice may be necessary. But that question cannot be brought up here, as no damages were given.

In the case of *Walden* v. *Peters*, 2 Rob. 337, quoted by the defendant, the court correctly remarks : " The principal object of such a suit, according to the spanish law from which we derive it, is to quiet titles, or to compel the defendant either to waive all right, or to institute a suit and thereby enable the plaintiff to make good his title. Whenever there is a waiver of title that object is attained. " The object of the law," says this court in the case of *Livingston* v. *Heerman*, was to protect possession; to give it the same advantages when disturbed by slander as by actual intrusion; to force the defamer to bring suit, and throw the burden on him of proving what he asserted." 9 Mart. 714.

*Henderson* and *Prentiss*, for the appellant. The judgment condemning defendant to institute suit within one month, or, in default thereof, to be forever enjoined from making any pretension to the property in dispute, exceeds the power of the court. The fixing of a prescription to an action is a legislative, and not a judicial, function. The legislative and judicial powers are separated by the constitution. The 46th law, tit. 2, of the second Partida, on which this action is based, is repealed. See sec. 25 of the stat. of 1828. C. C. 3521. This law 46, even if in force, is confined to matters affecting personal rights, as where one person proclaimed another to be his slave, or defamed his character.

The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff, alleging himself to be the owner and in possession of a valuable plantation in the parish of Plaquemines, with the slaves thereunto belonging, complains that *Greenberry Dorsey* has slandered his title, by giving out to divers persons that he had an interest in said plantation and slaves, or that he had a right to a portion, or was part owner thereof. It is alleged that *Dorsey* had no right, title or interest in any portion of the plantation or slaves, and that the declarations thus made by said *Dorsey* were made maliciously, and for the purpose of disturbing the petitioner's right of property and preventing his disposing of the same. The prayer of the petitioner is for the payment of $5,000, damages alleged to have been suffered by the acts of the defendant, and that the defendant be decreed to produce his titles, if any he have, in support of his claims to the said plantation and slaves, and to prosecute suit thereon to final judgment, and, in default thereof, that he be forever enjoined from setting up said claims or bringing an action thereon, and that the plaintiff be decreed to be the sole owner of the plantation and slaves, free from all claim on the part of said *Dorsey*. It concludes with asking for general relief. This petition was filed on the 24th February, 1846.

The defendant pleaded the general issue, and denied expressly that he had ever slandered the plaintiff's title, but alleged that he had only taken measures to exercise his legal rights and claims to said property, as well in his individual capacity, as in that of tutor of his minor children, and that he was about to institute legal proceedings against the plaintiff for the purpose of establishing his rights. He prayed to be hence dismissed, and also for general relief.

The cause was at issue on the 9th of March, 1846, and judgment was rendered on the 4th of March, 1847. The court, considering that the plaintiff had

a right to have the doubts created by the defendant's acts respecting his title to the property in question cleared up, gave judgment for the plaintiff, and decreed that the defendant be condemned, within one month from the date of the judgment, to institute the suit stated in his answer, or in default thereof that he be forever enjoined from making any claim to said property, and that the defendant pay costs.

It appears that, long after the term thus fixed for the institution of his suit, *Dorsey* filed his bill in chancery against *Packwood*, in the Circuit Court of the United States for this district, for the recovery of his interest in the plantation and slaves, and that *Packwood* has pleaded this judgment in bar of *Dorsey's* right of action.

It becomes, therefore, necessary to decide on the validity of this judgment. This is an action of jactitation or slander of title. Actions of this sort have several times been recognized by the Supreme Court, since the repeal of the spanish laws by the statute of 1828, and their utility in quieting titles and preventing the disturbance of owners by the putting forth unfounded claims to their property, we believe is unquestionable. In these cases the question has never been raised as to the power of the court to fix a term within which the defendant is compelled to set forth his title or institute his suit, under the penalty of being forever after estopped from asserting his claims, the court having tried and decided the issue of title tendered by the defendants. It is to this part of the judgment of the District Court that the argument of counsel has, on both sides, been directed.

It appears from the forms contained in the spanish books of practice, referred to by the counsel for the plaintiff, that in Spain judges were in the habit of fixing a term within which a person setting up a title to property in the possession of another was bound to institute his suit, under the penalty of perpetual silence. Whether such a judgment was final in all cases, or whether there was any relief afforded against it, we do not find stated in the works referred to by counsel. It appears that these judgments rested for their legality upon no legislative sanction, nor any recognized principle of the civil law, but entirely on an extension of a law of the Code of Justinian known as the law *Diffamari*. By this law, whoever defamed the condition of a person born free, could be compelled to exhibit his proofs and make them good in a court of justice, and in default thereof be condemned to perpetual silence in relation to the slander. The dignity which the law attached to the condition of a roman citizen, and the protection which it threw over the personal rights of all those subject to its dominion, explain at once the purpose and policy of this salutary provision. It was in derogation of the general principle *Invitus agere et accusare nemo cogatur*, and was enacted in the interest of public order, and for the maintenance of public peace among the different classes and races of the empire. An action was also given by a rescript of the Emperor Diocletian to a tutor, in case his former pupil had accused him of retaining the funds of the latter, in order to compel the pupil to institute his suit for an account.

Merlin says that the greater portion of the interpreters of this law, *Diffamari*, have extended it to slanders of the title of property, and to cases in which a party publicly claimed to be a creditor of another, and that this interpretation is in conformity with the spirit of the text. It must be admitted, however, he adds, that "learned jurisconsults, such as President Favre, Henrys and Duperrier, have resisted with great force the extension of this

PACKWOOD
v.
·DORSEY.

law *Diffamari.*" In the text of the spanish law, the singleness of the law *Dif-famari* appears to have been adhered to, and the law not to have been extended beyond cases in which the character of the person, the *status*, or condition of the party, is assailed.

No person can be compelled against his will to sue another, unless in certain particular cases wherein the judge may by law oblige him to do it; as where a man publicly says another is his slave, or defames him in the presence of other persons. In these and other like cases, he who is defamed may petition the judge to oblige the defamer to bring a suit and prove what he said, or to retract or to make such reparation as the judge shall deem just. Partida 3, tit. 2, law 46. Gregorio Lopez in his commentary extends this law to disturbances of titles to property by slander.

This action being recognized as a part of our jurisprudence, are we bound, in the exercise of it, to all the incidents to which under the spanish practice it was subjected? The repeal of the spanish laws by the act of 1828 is an answer to this question. At the same time that we are at liberty to adopt any rule in furtherance of the object of the action, and not contrary to our own Code of Practice, which the experience of courts of the civil law has proved to be necessary, we cannot recognize a proceeding which has never been acted upon in our courts, and which is in direct conflict with principles we consider elementary. The law itself fixes the limitation within which actions can be brought. The power which is assumed in the decree appealed from of fixing the term of one month within which *Dorsey* is compelled to bring his suit, under the penalty of losing his right of action, is in direct conflict with the law of prescription.

We do not find that this practice of depriving the party of his right of action in default of bringing suit, which the spanish courts impose, is followed in other countries in which the civil law prevails.

Merlin himself puts the question, whether the defamer after being condemned to perpetual silence, in consequence of not having instituted his suit within the term fixed by the judge, can have relief against this sentence, and be permitted afterwards to assert his rights. Wassenaer. Sola and Voët contend that he can, provided his demand in restitution be founded on a probable cause, as on his ignorance, at the time of being condemned, of the existence of certain proofs and facts material to establish the justice of his claims. But in this opinion Merlin does not concur, and thinks it is founded on a practice peculiar to courts in Germany, and that the restitution in a case like this ought to be confined to those causes which authorize the "*requête civile.*"

Müller, in his Promptuarium, tit. *Provocatio ex lege Diffamari*, s. 17, says that, if the defendant confesses the slander, and avers himself willing to institute his suit, *duplex terminus* saxonicus ei concedi solet, sub pœnâ perpetui silentii.

Voët states that one citation is not sufficient to authorize the decree of perpetual silence. Two at least, and sometimes three or four are considered necessary, before the party is condemned on his default. Voët ad Pandectas, lib. 5, tit. 1, s. 24. These discrepancies in the application of this extraordinary remedy result undoubtedly from the different modes of practice which prevail in different countries: but their existence shows the reluctance of courts in

---

\*Hodie simplex. Vol. 6, p. 165, Editio Leipzig.

concluding a party for ever by fixing absolutely a term during which only his rights can be exercised, and a disposition to avoid such a result.

In the jurisprudence of France, we have found no case in which a decree of this kind has been rendered against a party.

It seems to us that it is impossible to carry out the law Diffamari in its extension to all cases as maintained by the spanish writers, and the safest rule for us is to adhere to its original intendment and policy. In an action for the slander of title to property we see no reason why a judgment shounld not be rendered, ordering the defendent to institute his suit in order to establish his asserted pretensions to the property which he may set up. This judgment will stand to the plaintiff as a perpetual default of the defendant. But we know of no authority on the part of the court to fix any term, within which the party can be compelled to assert his rights under the penalty of being deprived of them. There are cases in which we have allowed the debtor to become the actor in a suit, but we do not consider that those cases affect the question decided in this.

The action for damages to which every one who injures another in his person or estate is liable, will we believe continue to be, as it has been, a sufficient protection for property against slanderers of title. · No damages have been given by the judgment in this case, and none are asked in this court.

We have been referred by counsel to the proceedings in courts of Chancery on bills of peace, but we find nothing in them which supports the part of the decree to which our inquiries have been directed.

The judgment of the District Court so far as it condemns the defendant within one month from date to institute his suit against the plaintiff, or in default thereof to be forever enjoined from making any pretention to said property, we think unauthorized by law.

The judgment of the District Court is, therefore, avoided and reversed; and it is ordered that judgment be rendered for the plaintiff against the defendant, and that the defendant institute the suit by him mentioned in his answer, and pay the costs of this suit, the plaintiff paying the costs of this appeal.