No. 13,299.

## St. Anna's Asylum vs. City of New Orleans et al.

### SYLLABUS.

1. The City of New Orleans has the legal right, when in possession for public uses of a portion of a *batture* directly upon the river, in front of which the river was forming a shoaling bed, to fill up this shoaling space up to deep water with earth, to protect the same outwardly by a bulkhead, to advance the landing line to the bulkhead and use the space in the rear of the bulkhead as a quay or place of deposit for unloaded cargoes. This advancing of the landing line does not carry with it necessarily a right on the part of the owner of the batture just in the rear of this new work, to take absolute possession of the same as full owner.

2. Where the city holding for public use batture property upon the Mississippi river which has in front a shoaling bank, determines for the convenience of commerce to advance the landing line to reach deep water, it has the legal right to enter into an agreement with private individuals to do the work necessary for this purpose, and to receive as an equivalent for such work a right of reasonable temporary use of such extension, and the batture just behind. The naked owner of the *batture* cannot disregard the agreement and dispossess the parties holding possession under

it, on the ground that such occupancy of the ground is a private occupancy.

3. If the agreement should be illegally or improperly exclusive of public rights of others, the courts would be open for their redress.

APPEAL from the Civil District Court, Parish of Orleans— *Rightor, J.*

*Fenner, Henderson & Fenner* for Plaintiff, Appellant.

*Samuel L. Gilmore,* City Attorney, and *Walter B. Sommerville,* Assistant City Attorney, for the City of New Orleans, Defendant, Appellee.

*Rice & Montgomery* for Wood, Schneidau & Co., Defendants, Appellees.

*William S. Benedict* for F. B. Nunn, Defendant, Appellee.

*Horace E. Upton* and *John R. Upton* for W. G. Coyle & Co., Defendants, Appellees.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J.   The plaintiffs in this suit were originally the St. Anna's Asylum, Mrs. Dora Stark and Mrs. Fannie B. Randolph. During the progress of the litigation the demand as to the two latter was discontinued.

The allegations of the petition as filed were:

That the St. Anna's Asylum is the owner of the square of ground situated in this city, and comprised within the following streets, to-wit: Race, Robin, S. Peters, or Levee street, and S. Front streets, together with all the batture or alluvion formed in front thereof between S. Front street and the Mississippi river, with the exception of one undivided half of that portion of said batture or alluvion which is formed in front of the one-half of said property fronting on S. Front street, and nearest to Race street, which said undivided half of said batture or alluvion belongs to your petitioners, Mrs. Fannie B. Randolph and Mrs. Dora B. Stark, as equal joint and undivided owners, all of which will be fully proved on the trial of this cause.

That there has been formed, and now exists, a large portion of batture or alluvion in front of said property, far more than is necessary for any public use.

That many years ago the city laid out and established a street known as Water street, between S. Front street and the Mississippi river, and thereupon abandoned to your petitioners the use of said batture lying between S. Front street and Water streets, of which portion your petitioners have since held full possession and use. That since the said establishment of Water street there has been formed between the said street and the Mississippi river large additional alluvion or batture, being about 180 feet on the Robin street line, and about 225 feet on the Race street line, by a width of 319 feet and 8 inches.

That some years ago, with the approval of the city, a plank road was built by the wharf lessees of the city, and running across said batture parallel to the Mississippi river, and at a distance from said river of about 36 feet, which said plank road has ever since been, and is now, used as a public thoroughfare.

That the portion of said batture or alluvion lying between said plank road and Water street, measuring about 157 feet on the Robin street line, and about 205 feet on the Race street line, by a width of 319 feet and 8 inches, is not necessary for public use, and is not and has not been for many years used for any public purpose.

That said property is and has been occupied for many years by certain coal merchants and dealers of the city of New Orleans, to-wit: F. B. Nunn, the commercial firm of Wood, Schneidau & Co., and the commercial firm of W. G. Coyle & Co.

That the aforesaid coal dealers occupy said property under a license from the city, without any consent or approval of your petitioners; that they have fenced in the whole of said portion of batture lying between the said plank road and Water street, and have erected thereon offices, stables, and other structures for their private use, and use the whole of said property exclusively for their own private business and purposes without any participation of the public in such use.

That the said property thus used and occupied is of great value and has a rental value of at least $3000.00 per annum.

That the said property is not necessary for public use, and is not now, and for many years has not been, applied to any public use, and that under the law your petitioners are entitled to the said property, and to a decree of this Honorable Court ordering the city of New Orleans

to permit them to enjoy the use and ownership of said property, and also ordering the said F. B. Nunn, Wood, Schneidau & Co., and W. G. Coyle & Co., to remove from said property, and further condemning them to pay petitioners rent for said property at the rate of $3000.00 per annum from the date of judicial demand herein.

In view of the premises, plaintiffs prayed for citation upon the city of New Orleans, F. B. Nunn, Wood, Schneidau & Co., and W. G. Coyle & Co., and for judgment decreeing plaintiffs to be entitled to the property herein described, lying between Water street and the plank road, and between Race and Robin streets, and compelling the said city to permit petitioners to enjoy the use and ownership thereof, and further, condemning the said F. B. Nunn, Wood, Schneidau & Co., and W. G. Coyle & Co., to remove from and vacate said property, and to pay to petitioners rent at the rate of $3000.00 per annum from judicial demand until they shall remove from and vacate said property.

Exception of vagueness, misjoinder of plaintiffs and defendants.

The defendants excepted to plaintiffs' petition on the following grounds:

1. That the allegations of plaintiffs' petition are too vague, general and indefinite, to enable exceptors to answer same, and that they cannot with safety do so until plaintiffs' cause of action, if any exists, which is not admitted, but denied, is set forth with more certainty.

2. That said petition discloses no cause of action against exceptors.

Wherefore defendants, specially reserving the right to answer in case these exceptions be overruled, pray that they be maintained and plaintiffs' suit be dismissed with costs and for all general and equitable relief.

The city of New Orleans pleaded the general issue.

It admitted that the other defendants, all of them receivers of and dealers in coal, were occupying the river front of the city between Race and Robin streets, under revocable licenses from the city. That such occupation is necessary for commercial purposes as a public place for receiving coal. That in the exercise of its corporate powers, to lessen the burden of taxation, and increase the facilities of trade in the article of fuel, which is of prime necessity, it has established and permitted a landing for coal between Race and Robin streets, where boats and barges are moored, and coal is unloaded.

Defendant specially denied that plaintiff had title of ownership, or that it had possession of any land or property between the prolonga-

tion of Race and Robin streets, and between Front street and the Mississippi river. Defendant denied that said described property ever was, or is now, embraced within "Faubourg Saulet," as alleged by plaintiff, which faubourg appears to have been laid out in 1810. Defendant alleged the property mentioned in plaintiff's petition to have been formed, and to be now, in front of and part of "Faubourg Lacourse."

That, in 1807, P. R. Delogny, who had previously acquired "Faubourg Lacourse" from J. F. E. Livaudais, divided said faubourg into lots according to a plan by Bartholomy Lafon, surveyor of the territory, and advertised said lots for sale according to a prospectus wherein it was stipulated that said Delogny obligated himself "to leave open, for the common use of the purchasers, the space which is to be found between the river and the first line of lots on the said plan, without power to sell the same for their own profit or for that of any one." That said lots were sold and they were now the property of private individuals; and that by such sale Delogny divested himself absolutely and irrevocably of all titles to the ground between New Levee street and the Mississippi river in "Faubourg Lacourse," as well as that which has been formed by accretion in front of said faubourg since 1807. That plaintiff did not set up title from J. F. E. Livaudais, or P. R. Delogny, or their vendees, and that it had no title to the property claimed in its petition.

Defendant further showed that in the chain of title of the triangle marked "B" in front of square 32, having — feet front on Race street, by — feet front on S. Front street, and — feet front on S. Water street, and facing lots 7, 8, 9, 10, 11 and 12 in square 32; that plaintiff alleged title to the one undivided half of said piece of ground in others than itself, and it is not therefore entitled to the one undivided half of the batture fronting the same. That plaintiff had no title whatever to the other undivided half of the batture in front of the same triangle marked "B," which undivided half of triangle of ground was sough. to be sold under executory proceedings, without accretions, after a large amount of dry land had been formed between the said plot of ground and the Mississippi river, and defendant further showed that S. Water street had been laid out through and over said plot of ground, and that there was little or no portion of said ground left; and that the same had not been riparian property since, and for some time before, plaintiff's pretended acquisition of title to the said undivided one-half

Nunn and the firm of W. G. Coyle & Co., after pleading the general

issue, denied that plaintiffs were entitled to any relief or remedy against any of the defendants; that they had any right of ownership in and to the property for which they prayed to be declared owner, and respondent specially denied that the same was not necessary for the public uses and now specially averred:

That they occupied the property on the river bank, between the streets leading at right angles therefrom, as described of a small portion under grant from the city of New Orleans, for due consideration, as a public landing, necessary for the use of the commerce of the port of New Orleans, and which has been so known as such public landing for a period of more than thirty years last past, and is still necessary for the use of the city of New Orleans, and the city of New Orleans, as such grantor, is bound in law to warrant this respondent in the peaceable possession thereof.

That the plaintiff herein, by itself, and subsequently by and through Mrs. Randolph and others, co-plaintiffs, on two separate occasions during the past two years, applied to the city of New Orleans to have said property declared to be no longer necessary for public uses; that after full investigation on each different occasion, by its committees and sub-committees, the said City Council, in its discretion, being fully advised in the premises and of the necessities of the port therefor, refused to declare said property no longer necessary for public uses; that the discretion of the said city in its wise exercise cannot be controlled herein by judicial action.

That said land was well kept by this respondent, was filled by respondent, and paved by respondent with the approaches thereto, and was used for the purpose of unloading coal boats to supply the city and its inhabitants in part with coal; that no part or portion of the improvements thereto were made, had or furnished by the plaintiffs herein, or by any one on its behalf, and respondent was not liable to said plaintiff in any sum as for rental value of said property.

In view of the premises, respondent prayed notice to its co-defendant, the city of New Orleans in warranty, that there be judgment herein as against plaintiff; that its action be dismissed, and there be judgment in favor of respondent with costs; if otherwise, that there be like judgment as against the city of New Orleans in favor of this defendant in warranty, and for all general relief.

Wood, Schneidau & Co. pleaded the general issue.

The St. Anna's Asylum subsequently pleaded the prescription of ten,

twenty and thirty years, alleging that it and its authors had been in uninterrupted and in peaceable possession, in good faith and under just titles, for more than thirty years of the property or estate to which the batture herein sued for was attached and belonged, and that by reason of such possession, under such titles, it pleaded, in addition to its other titles, the prescription of ten, twenty and thirty years.

The District Court overruled the plea of prescription filed by the St. Anna's Asylum and rendered judgment in favor of defendant and against plaintiff, 'the St. Anna's Asylum, dismissing the suit.

The court stated that "it considered especially that the land in dispute formed part of Faubourg Lacourse and not a part of Faubourg Saulet."

The St. Anna's Asylum appealed.


## OPINION.

This suit is brought by St. Anna's Asylum against the city of New Orleans, and certain parties occupying different portions of the property referred to in the pleadings, under ordinances of the city, as will be hereafter mentioned. It is based upon the provisions of Section 318 of the Revised Statutes which declare that "whenever the riparian owner of any property, in 'the incorporated towns or cities in this State, is entitled to the right of accretion, and batture has been formed in front of his land, more than is necessary for public use which the corporation withholds from him, he shall have the right to institute suit against the corporation for so much of the batture as may not be necessary for public use, and if it be determined by the court that any portion of it be not necessary for public use, it shall decree that the owner is entitled to the property, and shall compel the corporation to permit him to enjoy the use and ownership of such portion of it."

The city does not claim ownership of the property, but denies that of the plaintiff, and, therefore, its right, under the statute, to bring the suit. It does not set out what the names of the parties are in whom it may believe such ownership to be vested.

There are no parties before the court asserting rights of ownership adverse to the plaintiff; the issue is before us only by reason of the contention of the city that a party in possession of property can only be dispossessed by one having rights himself. The city presents, under its pleadings, very complicated and difficult questions, both of law and of fact, which the conclusions which we have reached render it unnecessary

to decide. We need not examine how far the city of New Orleans, occupying the position it does, has the right to invoke in its own. behalf the rights of third parties, and to what extent the plaintiff, as against it, would be called upon to exhibit a title good and perfect against the whole world.

The character of the action, as well as the pleadings of the plaintiff, place the property before us, so far as it is itself concerned, as *batture* property of which the city has had possession up to the institution of the present proceedings.

The property is in the actual occupancy of F. B. Nunn, Wood, Schneidau & Co., and W. G. Coyle & Co., under Ordinances No. 7427 A. S., and No. 5345 C. S.

The first of these ordinances was of date of November, 1881, and reads as follows:

"That portion of the river front, between Race and Robin streets, commencing at a point twenty feet from the river side of Water streer (making said street eighty feet in width instead of sixty feet as at present laid out), and extending to the water's edge, be and the same is hereby set apart as a coal landing for the sole use of W. G. Coyle & Co., C. A. Miltenberger & Co., William Lee, B. D. Wood & Bros., and W. J. Wilmot & Co., and other coal dealers, they paying their *pro rata* of expense for the period of ten years from the grant of this privilege; provided, that for and in consideration thereof the parties hereinbefore mentioned do bind themselves to remove all obstructions now on said street to the lines hereinbefore mentioned, and further obligate them-selves to fill up to a grade, to be designated by the city surveyor, the said property herein designated at their expense, and to return the same to the city of New Orleans thus improved, without charge, at the expira-tion of ten years.

"Should the accretions continue to that extent that the demands of commerce, in the judgment of the council, necessitate the opening of any street through said property without rendering said property use-less for the purposes for which it is intended, whatever space may be required for such street shall be left open for public use without charge to the city.

"It is understood that after the expiration of one year they shall remove the bulkhead on Pilie street and be allowed to extend their limits twenty feet further in the river.

"Article 3207. That the privileges granted under Ordinance 7427,

A. S., setting aside certain portions of the river front as coal landings to the persons therein designated, be and the same is hereby assigned and transferred to Messrs. W. G. Coyle & Co., James Sweeney, Wood, Schneidau & Co., and Fred. B. Nunn, from the passage of this ordinance until the expiration of the wharf lease now before the Council for adjudication, upon the terms and conditions of Ordinance 7427, A. S.; provided, that said grantees shall at once put in thorough repair, and at all times during the continuance of this grant, keep in good order and condition satisfactory to the Commissioner of Public Works and City Engineer, the roadway in the rear of this grant and the approaches thereto, viz: Race and Robin streets, from Tchoupitoulas street to and including said roadway.

"The wharf lease referred to in Ordinance No. 5345, whose termination is made by that ordinance to also terminate the privileges granted therein, will end in two years and a half or thereabout."

The evidence shows that the batture in question is in front of a portion of the city, on the Mississippi river, where for many years back there has been what is called a "forming bank," that is, a bank gradually extending outward, by reason of accretions—deposits thereto from the river. The process of extension is gradual, and it is shown that a portion of the deposit accumulated during the high water is washed out or disappears as the river recedes. It will be readily seen how this shoaling or shelving in front of the original bank would, in the port of a city, become a matter of inconvenience. In low water, the landing of cargoes would have to be made year by year further and further away from the regular "landing line," and while in high water, the water would cover the land in front, and yet might not be sufficiently deep to admit of boats reaching the landing.

In view of this condition of things, and to meet it, it has been usual for the city, either to assist the gradual operation of natural causes by filling up with earth, by artificial means, the space in front to the distance needed, and to the height needed, and then moving forward the "landing line," and protecting it in front with a revetment or a bulkhead, or by building wooden wharves, extending forward over the shoal places. There can be no question that the city of New Orleans was legally authorized, in the interest of the public and of commerce, to either do this work itself or to have it done for it by others at public expense.

Article 863 of the Civil Code declares that "the corporations of

cities, towns, and other places, may construct on the public places, in the beds of rivers, and on their banks, all buildings and other works which may be necessary for public utility, for the mooring of vessels, and the discharge of their cargoes, within the limits of their respective limits."

The evidence shows that the privileges conferred upon the parties named in the ordinances mentioned, were not gratuities, but were granted for a consideration which we must presume was not in excess of the value of services rendered, of the precise character we have alluded to. They were not privileges of a permanent character, but were granted for a reasonably short time at which they were to end.

In Fleitas vs. City of New Orleans, 51 Ann. 25, we said: "The legality of making use of private individuals or corporations as public agencies in the accomplishment of public purposes through special contracts, has been frequently recognized by the courts of the different States, notably, in the case in the 140th U. S. Reports, 662, in respect to this very contract," ("the sugar shed contract").

In making that statement, we were merely reiterating what had already been said by this court in Brown vs. The City of New Orleans, 14 Ann. 843, 844; Kline vs. The Parish of Ascension, 33 Ann. 566, and Heirs of Leonard vs. Baton Rouge, 39 Ann. 285.

If the work done by the defendants in this case, other than the city of New Orleans, had been done for and in consideration of a sum of money, and the property, the right to whose possession is in controversy herein, had been taken possession of by the city and thrown open as a place for the general unloading of coal boats, and for the deposit of coal as a public landing, we scarcely think the present action would have been brought. The right of the city to the continued occupancy of the property would, we think, have been recognized. The peculiar feature in the situation, which we think has given rise to the litigation, is the fact that the property has been fenced in from the front and the different private parties and partnerships, defendants herein, have been using it, and are still using it for their exclusive use as a place for the deposit and sale of their coal.

We do not think that fact controls the rights of parties under the circumstances of this case. If it be true, in fact, that the privileges in question are special privileges illegally granted to these particular parties; if it be true that they have illegally fenced in the property, and that they should have removed in the past, and should be made to remove in the future from the property, within a reasonable time after

unloading the coal which they deposit upon it, those are issues which the plaintiff is not warranted, if the property be really not otherwise subject to private possession, in raising, simply in virtue of a right of *ownership.*

Parties whose rights are specially and directly affected by these particular facts are the proper ones to urge them.

The plaintiff has not contributed a dollar towards the present improved condition of the property. It has made no offer to remunerate the private parties, now occupying the premises, for their outlays, but it seeks to avail itself of their expenditures without compensation. It has allowed the defendant to expend money since 1891, without objection, and two years in advance of the period which they and the city have determined as that which would repay them for their services, it seeks to oust them from the property which they occupy under an agreement in the nature of a contract, if not a contract.

If true it was that it was entitled to have had a preference over the defendant of taking possession of the property on the same terms and conditions under which the defendants were allowed to take it, it is sufficient to say that it made no offer to do so or to obtain or to exercise such right.

It makes no offer now, but seeks to obtain from the court a decree recognizing its right of full ownership and full possession. If the decree which it seeks should be granted to it, it would enter into full possession of the property, thoroughly untrammelled as to the uses which it would put it to. It could, at its own will, build residences, put up manufactories upon it, or employ it for any other purpose which it might think fit, and do away with it entirely as a coal landing. It may well be that at the termination of the privileges granted to the defendant, plaintiff may be able to effect some arrangement itself with the city.

The plaintiff takes the position, as we understand, that the moment a levee upon a piece of property is moved forward to the water line of the river, the land behind the levee becomes private property, and should pass at once, *ipso facto,* into private possession. It cites 8 Rob. 213, in support of that proposition; the proposition is too broadly stated. It may be correct, under some circumstances and conditions, and as between some parties, but it is not a rule of general application, regardless of the status of the property, by whom controlled, and how, and for what purpose it had come to be thrown behind the levee. It is

questionable whether the term "levee" is strictly or properly applicable to a bulkhead thrown forward, not for protection from inundation, but to establish a new "landing line" on the river front of a city. The property in question is in the limits of a municipal corporation, on the river front, and is substantially a "landing," a "wharf," a quay, a place in aid of and in furtherance of the right granted by Article 455 of the Civil Code, which declares that the use of the banks of navigable rivers, or streams, is public; that, accordingly, any one has a right to freely bring his vessels to land thereto, unload his vessels and deposit his goods.

The word "quay" is defined in the Century Dictionary: "as a landing place; a place where vessels are loaded and unloaded; a wharf—usually constructed of stone, but sometimes of wood, iron, etc., along a line of coast, or a river bank, or around a harbor or dock," and adds, from Blackstone, Com. I. VII., the sentence: "To ascertain the limits of all ports and to assign proper wharves and quays in each port for the exclusive landing and loading of merchandise."

The plaintiff complains that too much space has been given by the city to the other defendants. The parties to the agreement thought otherwise, and we cannot, in this suit, say that what were given and received on each side were not equivalents.

It has been testified to that no one occupies the river front in front of Water street, in right of private ownership, other than the Gas Company.

That company is not before the court, and we have no knowledge of the circumstances under which it acquired possession of the tract it holds. It was further testified to that there has been no uniform distance established along the river front from the front line of private occupancy to the river's edge. That the distance varies at different points, by reason of different conditions.

This case resembles very closely, in its facts, the case of the Heirs of Leonard vs. City of Baton Rouge, 39 Ann. 275.

We are of the opinion that in the present condition of things, and as matters stand, the plaintiff is not entitled to the judgment it asks, but that the court erred in rendering a final judgment against it. The judgment, in our opinion, should have been one of non-suit.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that plain-

tiff's demand be rejected as of non-suit and without prejudice, and its suit is dismissed. The costs of appeal to be paid by the appellees; that of the District Court by the plaintiff.

Rehearing refused.