(62 South. 657.)

No. 19,445.

LACROIX v. CRANE.

(May 12, 1913. Rehearing Denied June 9, 1913.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS (§ 380*) —SALES—INVALIDITY—CURE BY PRESCRIPTION.

Where lands appraised at $600 were sold under order of court, at their first offering, for $55, the sale is a nullity and not a mere informality curable by the prescription of five years.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1545–1553, 1555, 1564, 1567; Dec. Dig. § 380.*]

2. EXECUTORS AND ADMINISTRATORS (§ 353*) —SALES—VALIDITY.

Where, on the application of the succession representative, the court orders property to be sold to pay debts, no legal adjudication can be made on the first offering for less than two-thirds of the appraised value according to the last inventory.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1459; Dec. Dig. § 353.*]

3. ADVERSE POSSESSION (§ 23*)—PRESCRIPTIVE TITLE—SUFFICIENCY OF POSSESSION.

The occasional cutting of cross-ties on overflowed lands and the payment of taxes thereon do not constitute the actual corporeal possession required as a starting point for the prescription of ten years acquirendi causa.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 112, 113; Dec. Dig. § 23.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Maria Cecellia Lacroix against Harry W. Crane. Defendant dying, his widow and heirs were made parties defendant. From judgment for plaintiff, defendants appeal. Affirmed.

George J. Untereiner and W. S. Parkerson, both of New Orleans, for appellants. E. Howard McCaleb, J. B. Rosser, Jr., and Wm. Winans Wall, all of New Orleans, for appellee.

LAND, J. The plaintiff, alleging herself to be the administratrix of the succession of Francois Lacroix, deceased, and a creditor of said succession, and a beneficiary heir of said decedent, instituted the present action for the purpose of canceling from the conveyance records certain adjudications and sales of several tracts of land, containing 3,287 acres, belonging to the succession of Francois Lacroix, deceased.

The petition alleged that said lands in the year 1876 were inventoried in said succession and appraised at $600; that in the year 1878 the court ordered said property to be sold for one-half cash and the balance in one year; that on May 15, 1878, said property was, at the first offering, adjudicated to one Fred Daniel Brinkman for $55, payable one-half cash and the balance in one year; and on June 8, 1878, the administrator of the succession executed an act of sale to said Brinkman, in pursuance of said adjudication.

The petition further alleged that the defendant claims title to portions of said property under a deed of conveyance of date November 6, 1906, from the widow and heirs of said Brinkman to George Bensel, and under a deed of date March 18, 1907, from said Bensel to the defendant.

The petition further alleged that said sale and adjudication to Brinkman, in the year 1878, was absolutely null, void, and of no effect because made for much less than two-thirds of the appraised value of the property and at much less than its actual value at the first offering thereof.

The petition further alleged that the said property was not and had never been in the actual possession of the defendant or any other person.

The defendant appeared and excepted to the petition on the grounds of vagueness and of failure to disclose a cause of action. These exceptions were overruled. Defendant next pleaded that the plaintiff and the succession of Lacroix were estopped to deny defendant's title because of having joined in and signed the sale made to defendant's au-

thor and by her conduct and acquiescence in the sale by which the defendant and his authors became the owner of the property during a period of 30 years. Defendant further averred that he and his authors were purchasers in good faith, and had been in continuous possession of the property under title translative of property since the year 1878, and pleaded the prescription of 1, 5, 10, 20, 25, and 30 years in support of his title.

The defendant died pendente lite, and his widow and heirs were made parties defendants to the suit.

The defendants excepted to the proceedings on the same grounds of estoppel urged by the original defendant, and pleaded the same prescriptions. The defendants, among other things, averred:

"That the said property is now and has been swamp land covered with water for the past 40 or 50 years."

The defendants, reserving the benefit of their exceptions, answered, denying all the allegations of the petition, except those specially admitted. Defendants admitted the alleged probate sale to F. D. Brinkman and the subsequent transfers by and through which the title finally vested in Harry W. Crane, the original defendant.

Defendants denied that the property was adjudicated at the probate sale for less than its value, and averred that the price paid was all that the property was worth at the time of its purchase.

Defendants denied that the plaintiff was a creditor of Francois Lacroix, or that she was the legally qualified administratrix of his succession, and averred that her appointment, if any, was illegal because there were no debts at the time.

Defendants further averred that the property had been abandoned by the plaintiff and her coheirs, if she be the heir of Francois Lacroix, as alleged, but which was denied by the defendants.

The cause was tried in due course, and judgment was rendered in favor of the plaintiff as prayed for. The defendants have appealed.

The judge a quo found that the property was adjudicated at the probate sale of 1878 for less than 1.10 of the appraised value. On the question of possession, the judge a quo says:

"The land in question is swamp land, and the only possession ever attempted to be exercised by Brinkman or Crane was to lease the property in question to tie cutters and to pay certain taxes without physical possession."

On the question of value in 1879, plaintiff offered the inventory of 1876, which was made on the petition of Francois Edgar Lacroix, to be appointed administrator of the succession of Francois Lacroix. We make the following extract from said inventory:

"Eighty different tracts of land lying and being in the parish of Orleans on the left bank of Mississippi river and in the rear of this city; the said tracts of land containing in all 3,287½ acres according to 49 patents for land lying in township No. 12 east of the Mississippi river, and in the district of lands subject to sale at New Orleans, issued (in 1844) by John Tyler, President of the United States, to the late John McDonogh. * * * The whole valued by said appraisers at the sum of $600."

These same lands were devised by John McDonogh to the city of Baltimore, and in 1859 were sold by said city to D. P. Wessell and by him mortgaged to his vendor to secure the sum of $786.40, presumably the credit portion of the purchase price. In 1867 Wessell mortgaged the same lands to secure his note for $3,000, with interest, and in 1868 the mortgage was foreclosed and the property was purchased by Francois Lacroix for a price not shown by the record.

The 80 different tracts as thus described and appraised were in 1878 adjudicated and conveyed to F. D. Brinkman for the price of $55, payable one-half cash, and the balance on a credit. The whole price was paid in cash. The inventory is the best evidence of the value of the property in the year 1876.

As to its value in 1878, we summarize the evidence as follows:

Charles Loque: There was very little value at that time. The yellow fever of that year depressed values. Do not recall the month in which the fever began. In 1878 the lowest price fixed by the state for marsh lands was 25 cents per acre. Afterwards the price was reduced to 12½ cents.

W. A. Kernaghan: Do not know value in 1878. In 1885 the property was worth about 12½ cents per acre for speculative purposes. Now worth from $20 to $200 per acre.

Edgar Pilie: Do not know the value of the property in 1878 or now. The lands are low and subject to tidal overflow.

Albert Paul: Do not know the property, but knows about where it is. In 1878 such property was difficult to dispose of at any price, and was not in demand. In 1878 or 1880 bought for his mother 20 or 22 low lots of ground, and considered them of little value. After his mother's death, the lots were sold for taxes, and, when he saw that similar lands were improving in value, he bought the property from the state. Do not know the value of marsh lands around the city in 1878; no sale for them; almost "any figure would have been offered would have been accepted;" means by "any figure" 25 cents or $1 per acre. Such a price "possibly" would have been accepted.

A memorandum of taxes paid by the Brinkmans on the property in dispute shows that from 1880 to 1891, both inclusive, the assessment for each year was $100; that there was no assessment between the years 1891 and 1906; that the assessment for 1906 was $1,400 and $1,500 for each subsequent year.

It seems from the testimony of Mrs. Crane, a daughter of F. D. Brinkman, that her father sold all the prairie land to a Mr. Thompson, and on her father's death her mother came into possession of over 800 acres of timber land. The same witness testified that both her father and mother leased the lands to tie cutters at $50 per annum.

The probate proceedings show that in March, 1878, the property now in dispute was ordered sold for cash on the petition of a large number of creditors of the succession of Francois Lacroix, then under the administration of the public administrator. The creditors desired that the property remaining unsold should be disposed of in the most summary manner, and that a tableau of administration be filed as soon as the sales were made. On the petition of the public administrator, signed also by counsel representing a large number of creditors and by "counsel for Widow Lacroix," the court ordered the property to be sold for one-half cash and the residue payable in one year from the date of the adjudication, with interest at the rate of 8 per cent. from said date. The property was sold without appraisement.

The record does not show any subsequent proceedings in the succession of Francois Lacroix, which appears to have been insolvent.

The plaintiff in this case is a granddaughter of Francois Lacroix, and as such was recognized by a decree of the Supreme Court rendered on December 18, 1876, which declared her to be the legitimate child of Victor Lacroix, and entitled as such, by representation to the rights of her father, in the succession of her grandfather, Francois Lacroix.

In October, 1906, Cecelia Lacroix, presumably the plaintiff, was appointed and qualified as administrator (sic) of the succession of Francois Lacroix.

There is nothing in the record before us to suggest that the lands in question, prior to the adjudication to Brinkman in 1878, had been offered for sale and had failed to bring two-thirds of their appraised value. If the mortuary proceedings in the succession of Francois Lacroix had disclosed such a

state of facts, it is fair to presume that counsel for defendants would have offered them in evidence.

The property was sold without the benefit of appraisement and at its first offering, and was adjudicated for less than one-tenth of its appraised value, as per last inventory.

In Succession of Hood and Wife, 33 La. Ann. 472, the court, after a careful review of all codal provision and adjudged cases on the subject-matter, held the rule to be that, on the application of a succession representative for a sale to pay debts, the property of the estate "can be legally sold *for less* than the appraisement thereof, but not for less than two-thirds thereof at the first offering." The question thus adjudicated was set at rest by that decision.

[1, 2] The next question is whether the defect in the adjudication is a nullity or an "informality" curable by the prescription of five years as provided by article 3543 of the Civil Code.

In Thibodeaux v. Thibodeaux, 112 La. 906, 36 South. 800, this court held that a probate sale, upon the first offering of the property of a succession for less than one-tenth of its value, according to the last appraisement, is a nullity and not a mere informality curable by the prescription of five years. According to the reasoning of the court in that case, the question of "informality" vel non depends on the value of the property at the time and under the circumstances of the sale. The court held that if property be sold for less than two-thirds of the appraisement, and less than its value at the time, the defect is one of substance. In such a case there is not only illegality but substantial injury. We adhere to this ruling as correct in principle and as necessary for the protection of creditors, heirs, and all other persons interested in the administration of estates according to law. In the case at bar the evidence tends to show that the appraisement of the property was 20 per cent. below the price fixed by the state for marsh lands. The timber on the property had commercial value and enhanced the value of the property as whole. The lands were entered by John McDonogh, a sagacious investor in real estate, in the year 1844. In 1859 the same lands were purchased by Wessell from one of the legatees of McDonogh for a price, the credit portion of which exceeded $700. In 1867 the same property was mortgaged by Wessell to secure his note for $3,000, and in 1868 was purchased by Francois Lacroix. In 1876 the property was appraised at $600. The only witness for defendant who ventured to estimate the value of the property in the year 1878 fixes it at not less than 25 cents per acre. The sale was for less than 1.10 of the appraisement, which was very conservative. The case is on all fours with that of Thibodeaux v. Thibodeaux, supra.

[3] The prescription of ten years is not applicable, as the defendants and their author never had any actual corporeal possession of the premises. The only evidence as to the leasing of the property to tie cutters is the testimony of Mrs. Crane, who personally knew nothing about the matter. The occasional cutting and removal of timber from overflowed lands, and the payment of taxes thereon, are insufficient to establish the actual possession required as the basis of a prescriptive title. Howell v. Metropolitan Land Co., 127 La. 399, 53 South. 664.

An affirmance of the judgment below will restore the property to the succession of Francois Lacroix to be administered according to law, without prejudice, however, to the rights of third persons who may have acquired portions of the property from Brinkman, his heirs or assigns.

It is therefore ordered that the judgment appealed from be affirmed, with reservation of the rights of defendants to recover the price paid at the probate sale and taxes paid on the property. It is further ordered that defendants pay costs of this appeal.