(115 So. 733)

No. 27582.

BRUNING v. CITY OF NEW ORLEANS et al.

Oct. 5, 1926.   On First Rehearing, July 11, 1927.   On Second Rehearing, Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. **Ejectment** ☞90(1)—Petitory action; limiting proof to fact of possession and excluding evidence of ownership, in possessory action for trespassing, held proper; plaintiff's possession being denied (Code Prac. art. 53).

In possessory action to keep city from trespassing on property, court's ruling in limiting introduction of proof to fact of possession and to act of disturbance, rather than permitting evidence of ownership, *held* correct, under Code Prac. art. 53, providing that, when possession of plaintiff is denied, no testimony shall be admitted except as to fact of possession.

2. **Ejectment** ☞4—Petitory action; that petition in possessory action for disturbance of possession alleges that plaintiff is owner does not affect nature of action.

Mere fact that petition in possessory action for disturbance of possession alleges that plaintiff is owner of property does not affect nature of action; allegation being proper, and sometimes necessary to fix extent and capacity in which plaintiff possessed property.

3. **Ejectment** ☞19—Petitory action; dumping trash, upon, and removing dirt from, property held not equivalent to possession.

In possessory action against city for trespass, fact that city had dumped trash on property and removed dirt from it *held* not acts amounting to possession.

4. **Ejectment** ☞16—Petitory action; one in possession of realty, evicted by city by force, is entitled to bring possessory action, regardless of length of possession (Code Prac. art. 49).

Under the express provisions of Code Prac. art. 49, one in actual possession of real estate who has been evicted therefrom by city by force

is entitled to bring possessory action, regardless of whether his possession has continued for year or for time less than year.

On First Rehearing.

5. **Municipal corporations** ☞657(3)—Possession of public lands by individual is not sufficient to entitle possessor to maintain himself against public until ousted by petitory action.

Mere physical possession of property, title of which is vested in public, is not such possession as entitles possessor to maintain himself against public until ousted by petitory action, public being entitled to enter thereon at once.

6. **Navigable waters** ☞36(4)—Possession of land actually or seasonably covered by water of sea does not entitle possessor to maintain possession against public until ousted by petitory action.

Physical possession of land actually covered by water of sea is not sufficient to entitle possessor to maintain self against public until ousted by petitory action, notwithstanding that such land be uncovered even for whole seasons at time, if in fact it be subject to periodical inundation by regular rise or flow of water at appropriate seasons.

7. **Boundaries** ☞13—Meander line must conform to, and approach, true shore line, otherwise deed given according to survey does not convey title to water's edge, but only to line laid out.

Meander line, supposed to mark shore line of body of water, must conform to, and approach, shore line, otherwise deed given according to such survey does not give title to water's edge, but only to line laid out.

8. **Constitutional law** ☞42—Constitutionality of act may not be attacked by one having no interest in questioning constitutionality.

Constitutionality of act may not be attacked by one having no interest in questioning constitutionality.

9. **Statutes** ☞109—Attack on constitutionality of act, because title was not broad enough to cover its provisions, held to fail, where subsequent act embodying provisions had title broad enough to cover act.

Attack on constitutionality of act on ground that title was not broad enough to cover its provision *held* to fail, where pertinent provisions of act were embodied in subsequent act, title whereof was broad enough to cover all that it contains.

**10. Appeal and error ⟨key⟩840(1)—Supreme Court will consider title in possessory action for trespass, where essential to determination of plaintiff's right of action.**

Supreme Court will consider title to property in possessory action for trespass, where essential to determination of plaintiff's right to maintain action, particularly where the subject of controversy is land which plaintiff could not rightfully possess as against public.

**11. Navigable waters ⟨key⟩44(1, 6)—There is no such thing as right of batture, alluvions, and accretions on Lake Pontchartrain, nor in any case to lands reclaimed with public money.**

There is no such thing as right of batture, alluvions, and accretions on shores of Lake Pontchartrain, an arm of the sea, nor in any case as to lands reclaimed by artificial process with public money.

On Second Rehearing.

**12. Judgment ⟨key⟩249—Judgment determining ownership in possessory action for trespass, where both parties claimed possession, held erroneous.**

In possessory action for trespass to land brought against city, where city claimed it exercised exclusive administration and control over property, and plaintiff also claimed exclusive control, and judgment was entered which finally determined ownership, *held* that such judgment, so far as it purported to finally determine ownership of property, possession of which was in controversy, was erroneous; ownership not being in issue.

Brunot, J., dissenting on rehearing.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Amelia Bruning against the City of New Orleans and others. Judgment for defendants, and plaintiff appeals. Judgment set aside in part, and in part affirmed.

See, also, 152 La. 989, 94 So. 909.

Wm. Winans Wall, of New Orleans, for appellant.

Bertrand I. Cahn, City Atty., Francis P. Burns, Asst. City Atty., both of New Orleans, (Michel Provosty, of New Orleans, of counsel), for appellees.

BRUNOT, J. Plaintiff brought a possessory action, and enjoined the city of New Or-

165 LA.—17

leans, its agents and employees, from trespassing upon the property described in her petition. From a judgment dissolving the injunction, rejecting her demands, and decreeing the city of New Orleans to be the owner of the property, she appealed.

For convenience, we quote the petition, the answer, and the judgment:

"To the Honorable the Civil District Court in and for the Parish of Orleans:

"The petition of Mrs. Amelia J. Becker, widow of Theodore W. Bruning, formerly of this city, with respect, shows:

"I. That petitioner is the owner of a certain portion of ground, together with the buildings and improvements thereon, situated in the parish of Orleans, on the shore of Lake Pontchartrain, bounded by the projection of the line of the property formerly belonging to the New Orleans Canal and Banking Company, known as Metairieville, the projection of the line of the property belonging to the New Orleans, Jefferson and Lake Pontchartrain Railroad, and by the sidewalk along the south driveway of West End Park, measuring 584 feet front on said sidewalk by 982 feet on the line of Metairieville, and 829.9 feet on the line of the projection of the New Orleans, Jefferson and Lake Pontchartrain Railroad.

"Being part of the same property, purchased by petitioner from Henry A. Seiler, by act before John Bandernagle, on the 30th day of September, 1899.

"II. That petitioner and her authors in title have had actual, physical possession of said property, with buildings and enclosures thereon, as owners, for more than 75 years, and petitioner is now in actual physical possession of said property.

"III. That during the late World War, the United States, with the consent and permission of petitioner, occupied said property as a naval encampment or cantonment, and, immediately upon the United States vacating said property, petitioner caused fences to be built, and resumed her actual, physical, corporeal possession thereof.

"IV. That the city of New Orleans and one Wilbert Black, commissioner of public property of the city of New Orleans, have announced their intention to wrest petitioner's lawful possession of her aforesaid property from her, by force and violence, and, to that end, have instructed their agents and employees to destroy petitioner's fences around said property, and take possession thereof for the city of New

Orleans by force, in direct violation of petitioner's property rights.

"That, even were petitioner not the owner of said property by title going back by an unbroken chain of conveyances to a government exercising sovereign authority in Louisiana, prior to the treaty of Paris, the city of New Orleans would be without any right, title, or interest in and to said property, whatsoever:

"(1) Because the city of New Orleans pretends that it has a right to take petitioner's said property away from her, by reason of Act No. 209 of the General Assembly of the state of Louisiana, for the year 1906; that the city of New Orleans is entirely without any interest whatsoever in said property, because said property does not fall within the description of the land or property described in said act.

"(2) Because said Act 209 is unconstitutional, null, void, and of no effect, because the object of the act, which was to donate or place the administration of property of the state of Louisiana in the city council, is not expressed in the title, and therefore the said act is violative of the Constitution of Louisiana.

"(3) That said Act 209 is also null, void, unconstitutional, and of no effect, because in the body of the act, although no such intention is expressed in the title, it attempts to donate to the city of New Orleans, or the people of the city of New Orleans (which is the same thing), the property owned by the state of Louisiana in violation of article 58 of the state Constitution of 1898.

"VI. That, in furtherance of instructions given by said Wilbert Black, commissioner of public property, the employees of the city of New Orleans have, on two occasions within the past week, violently and by force destroyed petitioner's fences on the front of said property, and entered thereon, and dumped refuse, to the great damage and distress of petitioner.

"VII. That a writ of injunction is necessary in the premises to adequately protect petitioner's property rights, and, unless an injunction is issued enjoining and restraining the city of New Orleans and Wilbert Black, commissioner of public property, their agents and employees, from further violating petitioner's rights of possession and ownership of said property, petitioner will suffer irreparable injury.

"Wherefore, petitioner prays that an injunction be issued herein enjoining and restraining the city of New Orleans, Wilbert Black, commissioner of public property, their agents and employees, from entering upon or disturbing petitioner in her possession of the property above described; that the city of New Orleans and Wilbert H. Black, commissioner of public property, their agents and employees, from entering upon or disturbing petitioner in her possession of the property above described; that the city of New Orleans and said Wilbert Black may be cited to answer this demand, and, after due legal proceedings had, that there be judgment herein in favor of petitioner over and against defendants perpetuating said writ of injunction. And for all costs and general relief."

## "Answer.

"To the Honorable the Civil District Court for the Parish of Orleans:

"Now into court, through undersigned council, comes the city of New Orleans and Wilbert H. Black, commissioner of public property, made defendants in the above numbered and entitled cause, and for answer to plaintiff's petition says:

"I. Respondent denies the allegations contained in paragraphs I and II in plaintiff's petition.

"II. In answer to paragraph III of plaintiff's petition, respondent avers that during the late World War, the United States occupied the said strip of ground, and denies the other allegations contained in this paragraph.

"III. Respondent denies the allegations contained in paragraphs IV, V, and VII of plaintiff's petition.

"IV. Further answering, your respondent, the city of New Orleans, avers, by virtue of the act of Legislature, that it is the owner and has full jurisdiction and control over the above-described property, and that petitioner, Mrs. Bruning, has no interest whatever in said property.

"Wherefore, respondent prays that there may be judgment herein dismissing petitioner's suit, dissolving the injunction herein granted and recognizing the ownership of and jurisdiction and control over the property described in the original petition by the city of New Orleans, and for all costs and general and equitable relief."

## "Judgment.

"This case having been heard and submitted to the court, and the court considering the law and the evidence to be in favor of defendants, for the written reasons on file:

"It is ordered, adjudged, and decreed that there be judgment herein in favor of defendants, the city of New Orleans and Wilbert H. Black, commissioner of public property, and against plaintiff, Mrs. Amelia J. Becker, widow of Theodore W. Bruning, dismissing plaintiff's suit at her cost, and dissolving the injunction issued herein and recognizing the own-

ership of and jurisdiction and control of the city of New Orleans over the following described property, to wit:

"'A certain portion of ground, together with the buildings and improvements thereon, situated in the parish of Orleans, on the shore of Lake Pontchartrain, bounded by the projection of the line of the property formerly belonging to the New Orleans Canal & Banking Company, known as Metairieville, the projection of the line of the property belonging to the New Orleans, Jefferson & Lake Pontchartrain Railroad, and by the sidewalk along the south driveway of West End Park, measuring 584 feet front on said sidewalk by 982 feet on the line of Metairieville, and 829.9 feet on the line of the property of the New Orleans, Jefferson and Lake Pontchartrain Railroad.' "

In appellant's assignments of error we find the following:

(1) The suit is purely a possessory action, and title to the property cannot be legally adjudged in such an action.

(2) The court erred in its appreciation of the force of the proof offered by plaintiff to show possession and the disturbance thereof.

(3) The court erred in holding that possession for more than one year is necessary to support a possessory action when the possessor is evicted by force and violence.

[1] We have read the record carefully, and we note that, while defendants made several offerings during the trial of the case, for the purpose of proving title in the city of New Orleans, to the property in question, all these offerings were promptly objected to, each of said objections was sustained, and the proffered proof was rejected. Hence there is no proof in the record upon which to base that part of the judgment decreeing the city of New Orleans to be the owner of the property. The court's rulings in limiting the introduction of proof to the fact of possession and to the act of disturbance or eviction are correct and in accord with the letter of article 53 of the Code of Practice, which is as follows:

"The plaintiff in a possessory action needs only, in order to make out his case, to prove that he was in possession of the property in question, in the manner required by this Code, and that he has been either disturbed or evicted within the year previous to his suit.

"So that when the possession of the plaintiff, or the act of disturbing him is denied, no testimony shall be admitted, except as to the fact of the possession, or as to the act of disturbance, and all testimony relative to property shall be rejected."

[2] The jurisprudence of this state is uniform in sustaining the letter of article 53 of the Code of Practice. The mere fact that the petition alleges that plaintiff is the owner of the property does not affect the nature of the action. The allegation is proper and sometimes necessary to fix the extent and capacity in which the plaintiff possessed the property. The following cases are in point: Depassau v. Winter et al., 7 La. 1; Thomas v. Baillo, 7 La. 415; Gleisse et al. v. Winter, 9 La. 152; Kemper's Heirs v. Hulick, 16 La. 45; Hood v. Segrest, 1 Rob. 110; Mrs. Ann Huyghe v. Henry Brinckman, 37 La. Ann. 240; Williams et al. v. Harmanson, Agent, et al., 41 La. Ann. 704, 6 So. 604.

It is apparent that the judgment is erroneous in decreeing the city of New Orleans to be the owner of the property, the possession of which is the issue in this case.

It is not necessary to review all of the oral testimony offered to prove the fact of possession, and the acts of the respective parties to the suit indicative thereof, because our reading of the testimony has led us to the conclusion that the plaintiff has been in actual possession of the property for many years. During the late war the federal government occupied it for a time, and maintained a cantonment thereon, but, when the war ended, plaintiff resumed possession, and continued to exercise dominion and control over the property until the city of New Orleans forcibly entered it, dumped trash thereon, and removed some dirt therefrom for the purpose of filling low places in the West End

Park and for use around the rose bushes and flowers of the park.

We are led to the conclusion that plaintiff was in the actual possession of the property, because fifteen reputable witnesses, all of them past middle age, testify that they have known the plaintiff and the property for many years, some of them more than 50 years, and during that time the Brunings have lived on the property. They had two residences, several places of business, plank walks, some fences, etc., thereon. The property throughout that time was known as the Bruning property, and the Brunings had possession of it. It is also established that the defendant city took forcible possession of the property, and that the particular part of the property that was entered upon was fenced in. Mr. Charles Hemmenway, the park foreman, reported to his superior, Commissioner Wilbert Black, as follows:

"New Orleans, La., June 28, 1922.

"Commissioner Wilbert Black—Dear Sir: I beg to report I broke open gate on cantonment ground yesterday evening at about 2 o'clock. Mr. Joe Bruning came and asked me and I told him I broke it with orders. I wanted to haul in more trash. I met him again this morning and he told me that his lawyer would prefer affidavits this morning. Yours truly, Charles Hemmenway, Foreman West End Lake Shore Park."

[3] To show that the city of New Orleans was in possession of the property, and had possessed it for several years prior to the institution of this suit, Commissioner Black, Mr. Hemmenway, and two of the park employees were sworn and testified. All of them say the city had maintained a stable and house for the storage of feed for the mules on the property for a long time, and that wagons, carts, shovels, and park equipment, etc., were kept on the ground some 8 or 10 feet from the stable. These witnesses locate the site of the stable on the ground, about ten feet from the transmission house, and the maps offered in evidence show that the transmission house is located on an entirely different tract of land, and about 110 feet from the line of the Bruning property. It is apparent that the property of which the city of New Orleans had possession and on which it stabled its mules and parked its park equipment was not the Bruning property. The fact that the city dumped some trash on the Bruning property and removed some dirt from it are not acts which amount to possession. Macarty v. Foucher, 12 Mart. (O. S.) 11; Gardner v. Leger, 5 La. Ann. 594; Dowdell v. Orphans' Home Society, 114 La. 49, 38 So. 16; Ramos Lumber & Mfg. Co. v. Labarre, 116 La. 559, 40 So. 898; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 So. 906; Frederick v. Goodbee, 120 La. 783, 45 So. 606; Howell v. Metropolitan Land Co., 127 La. 403, 53 So. 664; Lacroix v. Crane, 133 La. 227, 62 So. 657.

[4] Under the provisions of article 49 of the Code of Practice, one in actual possession of real estate who has been evicted therefrom by force or fraud is entitled to bring a possessory action, regardless of whether his possession has continued for a year or for a time less than a year. The pertinent part of article 49, C. P., is as follows:

"In order that the possessor of a real estate or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required:

"(1) That he should have had the real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient;

"(2) That he should have had that possession quietly and without interruption, by virtue of one of the titles prescribed in the 47th Article, for more than a year previous to his being disturbed; *provided the possession of less than one year be sufficient, in case the possessor should have been evicted by force or by fraud.*"

Having found that plaintiff's assignment of errors, Nos. 1 and 2 and 3, should be sustained, there is no need to further consider the case, for these conclusions necessitate a reversal of the judgment.

For these reasons, the judgment appealed from is avoided and reversed, and it is now ordered that there be judgment in favor of the plaintiff and against the defendants reinstating and perpetuating the injunction issued herein, with costs of the appeal.

### On First Rehearing.

ST. PAUL, J. This is a possessory action brought by Mrs. Amelia J. Becker, widow of Theodore W. Bruning, against the city of New Orleans and its officials, to quiet plaintiff in the possession of certain property.

The pleadings are given in full in the original opinion herein handed down, and therefore need not be repeated here.

Suffice it to say that, if the property in controversy be of a nature subject to private ownership and exclusive private possession, then our former decree is correct, and should be reinstated.

[5] On the other hand, if the property in controversy be of that class of public things, "the property of which is vested in a whole nation, and the use of which is allowed to all (R. C. C. art. 453)," such as the *seashore*, being "that space of land, over which the waters of the sea spread in the highest water, during the winter season (R. C. C. art. 451)," or such as the streets and *public squares* of a city (R. C. C. art. 454), then mere *physical possession* thereof by a private individual "is not such a possession as entitles the possessor to maintain himself against the public until ousted by a petitory action; that the public is entitled to enter thereon at once." Martin v. City of Lafayette, 162 La. 262, 110 So. 415, and authorities there cited.

[6] The same is also true of land actually covered by the waters of the sea (Milne v. Girodeau, 12 La. 324); nor does it make any difference that such land be uncovered even for whole seasons at a time, if in fact it be subject to periodical inundation by the regular rise or flow of the water at the appropriate season (Sapp v. Frazier, 51 La. Ann. 1718, 26 So. 378, 72 Am. St. Rep. 493).

Hence, if this land be of the class above stated, then our former decree was erroneous, and the judgment appealed from, which was for defendant, should be affirmed.

### I.

Now the land involved in this controversy lies directly north of a certain tract of land which plaintiff's mother-in-law, Mrs. Catherine Zeller, widow of Theodore Bruning, acquired by purchase from Hyacinth Thomas Hazeur et al., by act before Ernest Commagere, notary public, on June 4, 1873. In fact, it is formed by extending in a northerly direction, some 800 or 900 feet, the side lines of the very tract of land so acquired.

Which tract of land, so acquired in 1873, is described as follows:

"A certain piece or portion of ground * * * situated on the shore of Lake Ponchartrain, * * * between the property belonging to the N. O. Canal & Banking Company, * * * and the property belonging to the Jefferson & Lake Ponchartrain Rail Road Company; said piece or portion of ground measuring, on the plan drawn by Jules G. Dreux, surveyor, on June 11, 1873, and deposited in this office, 500 feet in front on the line dividing it from the property of said N. O. Canal & Banking Company, * * * between the points marked A and D on said plan; 500 feet on the line dividing it from the property of the Jefferson and Lake Ponchartrain Railroad Company between the points marked B and C on said plan; 575 feet in width in the rear between the bounds marked C and D on said plan; and 575 feet in width on a line parallel with the Lake Ponchartrain, between the bounds marked A and B on said plan, * * * together with the right of batture, alluvions, and accretions, which shall form successively on the shore of said lake.

On August 2, 1889, Mrs. Catherine Zeller, widow as aforesaid, sold said land by the same description to one Henry A. Seiler; and on September 30th of the same year said Henry A. Seiler sold the same to the present plaintiff, daughter-in-law of his own vendor;

both acts being passed before John Bendernagel, notary public.

And Hyacinth Thomas Hazeur et al. had owned said property since their purchase thereof from Antoine H. H. Delorme, on August 25, 1828, by act before Louis T. Caire, notary public.

## II.

It is not seriously disputed, but at any rate it is abundantly proved, that the points A and B on the plan by which Mrs. Zeller (Bruning) purchased in 1873 are marked by two stones, which yet stand; and that the line drawn between these two stones marks the southern boundary of the property in controversy here; being also the northern boundary of the property described in the sale by Hazeur et al. to Mrs. Catherine Zeller Bruning on June 4, 1873.

Now the very title of Mrs. Zeller (Bruning) declares, that said line was parallel with the shore of Lake Pontchartrain in 1873; and, even if that title does not say so in just so many words, yet it leaves no room for doubt that the line was intended to show practically the location of the shore line at that time. Otherwise the making of the survey and the annexing of the plan (now lost) to the act of sale would have been both absurd and misleading. For the survey was undoubtedly made for the sole purpose of showing the extent and limits of the premises sold, to wit, a frontage of 575 feet on the lake by a depth of 500 feet between parallel lines. And a series of public surveys made at that time and before and afterwards all confirm the location of the shore line of Lake Pontchartrain as being practically at the line A B aforementioned.

[7] Moreover, if the line A B, indicating the northern boundary of the property purchased by Catherine Zeller Bruning in 1873, were not practically the shore line at that date, then her deed did not convey title to the water's edge, but only to that line; for a meander line supposed to mark the shore line of a body of water must conform to, and approach, the true shore line, otherwise a deed given according to such a survey does not convey title to the water's edge, but only to the line laid out. Land v. Brockett, 162 La. 519, 110 So. 740; Thigpen v. Noonan, 162 La. 527, 110 So. 743. And a distance of more than 800 feet from the water's edge is entirely too much for the meander line of a tract of land declared to have only 500 feet in depth from the water's edge.

## III.

There is considerable evidence in the record to the effect that in 1873, and for some years afterwards, the land now in controversy was dry and cultivatable, though even those who so testify admit that it was subject to periodical overflow in times of storms and high winds. But we think that these witnesses, who testify nearly 50 years afterwards, are mistaken as to the land which they saw, for other witnesses testify equally positively that the land was never cultivatable, and was always subject to constant inundation by tides and high water. And, as we have said, the public surveys made at the time and before and afterwards all show that the land in controversy was then under the waters of the lake.

## IV.

In 1828 the shore line of Lake Pontchartrain was probably much further north than in 1873, for in 1837 a state survey showed that it was. But from 1837 to 1873 the sea was taking its usual toll from the land; and the only reason why the shore line has remained practically intact at this point since 1873 is this, that in 1873 the city of New Orleans threw up a breakwater, in the shape of a "protection levee," at a point about 800 or 900 feet north of said shore line, which prevented further erosion.

And that brings us to the next phase of this case.

## V.

By Act 209 of 1906, and again by Act 9 of 1910, the city of New Orleans was given authority to fill in, improve, and embellish, as a recreational and amusement park (a) the aforesaid protection levee, (b) the lands lying under the waters of the lake for 1,500 feet north of said levee, and (3) the lands lying under said waters between said levee and the southern shore of the lake. (The property in controversy is included in the last.)

In 1915 the city did the work on the levee and to the north thereof. It also filled, to the south of said levee, that part which constitutes the property now in controversy; and *hence* this controversy.

## VI.

[8, 9] Plaintiff attacks the constitutionality of Act 209 of 1906, principally on the ground that the title to said act is not broad enough to cover its provisions. It is a sufficient answer to this to say: (1) That plaintiff has no interest in raising any question as to the constitutionality of that act; (2) that said act has been held constitutional in all its parts by this court in Saucier v. City of New Orleans, 119 La. 179, 43 So. 999; and (3) that all the pertinent provisions of that act have been embodied in Act 9 of 1910, the title whereof is broad enough to cover all that it contains, and the constitutionality of which is not attacked.

## VII.

[10] We are aware that the disposition which we are about to make of this case in accordance with the views herein above expressed will practically dispose of the *title* to the property in controversy; even over the objection of plaintiff that titles should not be gone into in a "possessory" action.

But this we cannot avoid. In order to determine whether plaintiff is entitled to maintain this sort of action, we were obliged to examine whether this be public property. We find, as a result of that examination, that it was once seashore and lake bottom, and that it has been recovered by artificial means, and with public funds, and dedicated to public park purposes.

If we were not permitted to do this, then any one may take physical possession of a street or park, or of a river bank or seashore; and, when removed therefrom by the public authorities, he may then deny the right of the court to examine into the question whether the place be in fact public property, on the ground that a finding that it is would dispose of the *title* to the property.

But, as we said at the beginning, our jurisprudence is to the contrary.

## IX.

[11] There is, of course, no such thing as a "right of batture, alluvions and accretions" on the shore of Lake Pontchartrain, an arm of the sea (Zeller v. Southern Yacht Club, 34 La. Ann. 837; R. C. C. 510); nor in any case as to lands reclaimed by artificial process and with public money (St. Anna's Asylum v. New Orleans, 104 La. 392, 29 So. 117; Leonard's Heirs v. Baton Rouge, 39 La. Ann. 285, 4 So. 241).

## Decree.

The judgment appealed from is therefore now affirmed; but the right is reserved to plaintiff to apply for a second rehearing.

## On Second Rehearing.

ROGERS, J. As stated in the opinions heretofore handed down herein, this is a possessory action in which the plaintiff seeks, as against the city of New Orleans and its officers and employees, to be quieted in the possession of certain property situated within the corporate limits at West End. In our opinion on the rehearing, we showed that the land in dispute lies directly north of plaintiff's property, which she acquired from Henry A. Seiler on November 30, 1889. In that

opinion we also said, among other things, that our disposition of the case "will practically dispose of the *title* to the property in controversy," even over plaintiff's objection that titles should not be gone into in a possessory action. In accordance with the views expressed in the opinion, we affirmed the judgment appealed from. It appears, however, that the court below went beyond the issue involved in the case, deciding the question of ownership. The mistake was not called to our attention until plaintiff applied for the second rehearing, and that rehearing was granted, mainly, for the purpose of inquiring into plaintiff's complaint in that respect.

Plaintiff contends and we think her contention is borne out by the record, that the action was held by the district judge to be possessory in character; that it was tried in conformity with the rules governing such actions; that all evidence tending to show title to the property was objected to by plaintiff's counsel, and was excluded by the trial judge, except to show the possession of the parties. Therefore our decree that the ownership of the property, its ownership not being at issue, was in the defendant, was erroneous, and whatever in our opinion supports that decree can have no bearing on the sole question involved—the possession, vel non, of the parties litigant. In so far as the opinion affects that question, however, we reaffirm the views therein expressed. We think it is pertinent to add thereto, however, that no complaint, apparently, was ever made by plaintiff, by her husband, or by her sons, of the action of the authorities in consistently claiming and treating the property in dispute as a locus publicus. This was done by the state Legislature when it adopted Act 209 of 1906 and Act 9 of 1910, authorizing the municipality to fill in, improve and embellish, as a recreational park, together with other lands, the lands lying under the waters of the lake between the protection levee and its southern shore. It was done by the municipality, when it employed the Jahncke Navigation Company to fill in the property in controversy; when, through its engineer, it notified Theodore W. Bruning, the husband of the plaintiff, to remove his restaurant from the inside of the levee and his bathhouse from the outside of the levee; when by ordinance adopted in 1882 it leased lot 14, located partly on the property in question, to David Rosenberg for a period of 25 years, and by letter of the city attorney it notified Mrs. Bruning, the plaintiff, and Mrs. Williams, her daughter, who were then occupying the leased premises, to remove therefrom within 30 days, because the property was required by the municipality for "the completion of the scheme of improving West End." In response to these demands, plaintiff's husband vacated concession space No. 17, which he was occupying, and plaintiff and her daughter vacated concession space No. 14, which they were occupying. Plaintiff's husband, on his removal, addressed a letter to the mayor of the city, asking that the building in which he operated his restaurant be donated to him, which request was granted. It was also done when the city, through its engineer, addressed a letter to plaintiff's husband, the body of which letter reads as follows:

"Recently, Mr. W. J. Warren (assistant city engineer) advised me that you pointed out to him a stone at the northwest corner and a post at the northeast corner of what you claimed to (have) bought representing the north boundary line of your property; please advise me if this is correct, and particularly whether you lay claim to any property north of the line drawn between said stones and post, and if you do so what is your authority therefor."

Neither plaintiff, who then owned, admittedly, the property south of the line drawn between the stone and post, nor her husband, who was managing the property for his wife,

answered this letter or set up any claim, at that time, to the property lying north of the line in question. On the contrary, about 4 months thereafter, upon the demand of the city engineer, the plaintiff's husband removed his bathhouse, which then stood on the outside of the revetment levee between it and the seawall.

That the municipality claimed and exercised the exclusive administration and control of the property is further shown by its tender thereof to the Navy Department of the United States government for its use during the war with Germany. The tender was accepted, and the property was used for some time as a naval training station. After the close of the war, the federal government donated the buildings which it had erected on the land to the city, which had them removed.

[12] For the reasons assigned, the judgment appealed from is set aside, in so far as it purports to determine finally the ownership of the property, the possession of which is in controversy between the parties litigant; and in all other respects the said judgment is affirmed, plaintiff and appellant to pay all costs.

O'NIELL, C. J., concurs.

BRUNOT, J. (dissenting). This is purely a possessory action; all proof of title was excluded. This opinion assumes that plaintiff has not, and cannot have, title to the property involved, and is therefore wrong.

O'NIELL, C. J. Inasmuch as the district judge sustained the plaintiff's objection to the introduction of evidence offered for the purpose of proving ownership of the property, and restricted the offerings of evidence to the purpose of showing who was in possession of the property, the judgment rendered by the district court, in so far as it decreed the city to be the owner of the property, was unauthorized by the evidence. The judgment should merely have dismissed the plaintiff's possessory action, reserving her right to bring a petitory action against the city. A possessory action against a municipality, to oust the municipality from the possession of property that is being used for a public purpose, is an improper and unauthorized proceeding, because the claim of the municpality that the property is public property, and is therefore not subject to private ownership, necessarily puts at issue the question of ownership, and the right of possession in such a case is merely an incident or a necessary consequence of the main issue. Bringing a possessory action in such case, instead of a petitory action, against the municipality, is a begging of the question of ownership. That ought to be the doctrine of our decision in this case, without expressing an opinion as to whether the city has the legal right to occupy as public property the property which the city is in fact—whether rightfully or wrongfully—using and occupying as public property.

As I understand, the decree now rendered on the second rehearing of the case merely dismisses the plaintiff's possessory action, and reserves her right to bring a petitory action, which, if brought, will put at issue the question whether the city has a right to occupy the property as public property. With that understanding I concur in the decree.