456 So.2d 1340 (1983)
Robert B. TODD, et al.
v.
STATE of Louisiana, Through the DEPARTMENT OF NATURAL RESOURCES of the State of Louisiana.
No. 82-C-2915.
Supreme Court of Louisiana.
November 28, 1983.
On Rehearing October 15, 1984.
Rehearing Granted December 6, 1984.
*1341 William J. Guste, Jr., Atty. Gen., Gary L. Keyser, David C. Kimmel, H. Glen Kent, Jr., Asst. Atty. Gen., for applicant.
Stephen P. Dart, Kilbourne & Dart, St. Francisville, Leslie D. Ligon, Jr., Ligon & Ware, Clinton, W. Hugh Sibley, Greensburg, for respondents.
Ernest R. Eldred, George L. Clauer, III, Sp.Asst.Attys. Gen. and R. Gordon Kean, Jr., Leonard L. Kilgore, III and A. N. Yiannopoulos of counsel, for amicus curiae.
CALOGERO, Justice.
We address in this opinion a question heretofore undecided by this Court, whether a possessory action may be brought against the State of Louisiana.[1] The case comes to us as a result of the following natural and legal events.
Turnbull Island was originally a peninsula-like section of land in West Feliciana Parish bordering Avoyelles, Concordia and Pointe Coupee Parishes, and around which the Mississippi River looped in its journey *1342 to the Gulf of Mexico.[2] The Red River entered the Mississippi at the northwestern bend of the loop; the Atchafalaya River branched off from the southwestern turn of the River. The land became an island in 1831 when navigational problems for river traffic on the loop and the perceived ease in channelling through the land's narrow neck to the east, resulted in the excavation of Shreve's Cut-off. Thereafter the main channel of the Mississippi River bypassed the circular journey around the island.[3] Through the years the water remaining along the northern edge of Turnbull Island, known originally as Upper Old River, formed a thalweg (a sort of a steep depression or descent) which came to be known as Sugar Mill Chute.[4]
The land between what is known as the 1845-47 meander line of Upper Old River to the south and the thalweg, Sugar Mill Chute, to the north, became the subject of the present controversy.
Robert Todd and Charles Haynes, Jr. bought the eastern half of Turnbull Island on June 8, 1978 from A.B. Stevens, who reserved the timber rights. On September 10, 1978, the State of Louisiana halted Stevens' timber operations on the portion of Turnbull Island between the 1845-47 meander line and Sugar Mill Chute. With legislative permission to sue,[5] plaintiffs brought a possessory action against the State of Louisiana. In their petition, they alleged that the property on which the timber operations
 *1343 had been halted was attached to Turnbull Island, having been formed by accretion, alluvion, dereliction or reliction, and that their ancestors in title had taken possession of the property through various acts of corporeal possession for one year prior to the disturbance. The plaintiffs sought judgment restoring possession, ordering the state to file a petitory action in the matter and awarding indemnification for loss resulting from the halting of timber operations.
The state reconvened, claiming possession of the disputed tract as the former bed and bottom of the Mississippi River. They also filed exceptions of no cause/no right of action and one styled "peremptory exception of sovereign immunity." Of significance to this decision was the exception based on the property's being public and as such "not subject to alienation by the state of Louisiana." The exception went on to recite, "[c]onsequently the property is considered to be in the public domain and a possessory action cannot be filed or prosecuted against the State since property in the public domain cannot be possessed by an individual for himself." The exceptions were referred to the merits.[6]
After trial, the court overruled all of the state's exceptions, recognized the plaintiffs' right to possession of the disputed tract, reserved to Stevens his right to seek damages for losses resulting from the state's halting the timber operations, dismissed the state's reconventional demand for possession, and ordered the state to file a petitory action within sixty days.
In overruling the exception of no cause of action which had been based on the premise that a possessory action may not be brought against the State of Louisiana, the trial judge noted that the relief granted to a plaintiff in a possessory action merely recognizes his right to possession, maintains him in his possession, and does not determine ownership or matters pertaining to acquisitive prescription.
On the merits, after examining the nature of the land in dispute, the nature of the possession and the nature of the alleged disturbances, the trial judge found that plaintiffs had proven their right to be maintained in possession of the property. The trial court found the land in question had been formed by the excavation of Shreve's Cut-Off and accretion. Secondly, the trial judge determined that the plaintiff had proven possession of the land to which the area in dispute was attached, as well as possession of the disputed land itself. Finally this possession was shown to have been undisturbed for a year prior to the halting of the timber operations, and the evidence of occasional hunting on the property by members of the public was found not to constitute contrary possession by the state.
The Court of Appeal upheld the trial court's judgment favoring plaintiffs in this possessory action without addressing whether the land was or was not formed by accretion. The Court of Appeal noted that the latter concern more properly affects the question of ownership of the property and should be resolved in a later petitory action. However, the appellate court found that, indeed, possession of the disputed tract by the plaintiffs had been established, and that since title is not at issue in a possessory action, there is nothing inimical to the state's interest in allowing the possessory action. 422 So.2d 1353 (La.App. 1st Cir.1982).
The Court of Appeal then reviewed and confirmed the acts of possession favoring *1344 the plaintiffs and denied the counterpart allegations by the state that it was in possession of the disputed area. We granted the state's application in this matter primarily to decide whether the lower courts were correct in allowing a possessory action to be maintained against the state.
It is the state's contention, essentially, that a private individual may not acquire possession of state corporeal immovables, because an individual may not "intend to possess as owner" and "take corporeal possession of [land claimed by the state]." La.C.C. art. 3424. Therefore a private individual cannot, through possession undisturbed for a year, acquire the right to bring a possessory action against the state of Louisiana, argues the state. La.C.C. art. 3422; La.C.C.P. arts. 3655, 3658.
Plaintiffs contend, on the other hand, that if the corporeal immovables claimed by the state may be possessed as possession is conceived under Louisiana law, then the right to possess should accrue after a year's undisturbed possession, and the remedy for the disturbance of that possession should be available irrespective of whether in fact it is ultimately shown that the land in dispute is state property and consequently imprescriptible.
Therefore we must decide first whether a possessory action against the state is permitted by law. The resolution of this outset issue entails a consideration of the nature of possession and the possessory action, the nature of corporeal immovables owned by the state, the nature of objects of a possessory action, and the interplay between possession, the possessory action and acquisitive prescription. And if we find that a possessory action may be maintained against the state, we must decide whether the possessory action will be so permitted with all of the attending codal consequences.[7] This latter question will be given distinctive treatment in this opinion.
Before beginning our discussion of whether the state may be sued under the present codal (and statutory) scheme in a possessory action, it is of more than just historical interest to note that from 1930 until the adoption of the Code of Civil Procedure in 1960, there was in effect a statute requiring that the state be treated specially in instances where a possessory action was brought against it. La.R.S. 13:5061[8] required:
That, whenever the State, a Municipality, Town or Village thereof, is sued as a defendant in a possessory action brought by any person, firm, or corporation claiming to possess as owner, usufructuary, or claiming a real right to property, which is also claimed by the State, a Municipality, Town or Village thereof, to be public property constituting a locus publicus, then, in such cases the possessory and petitory actions shall be cumulated and the claim of title or real right vel non, of the person, firm, or corporation bringing such possessory action shall be tried contradictorily with the claim of title of the State, Municipality, Town or Village thereof, and any judgment rendered on the petitory phase of such suit shall carry with it a determination of the possessory action in favor of the party whose petitory claim has been affirmed and recognized. That all such cumulated actions of the character herein described shall be tried by preference in all courts. (Emphasis provided.)
It was suggested at the time of its passage that La.R.S. 13:5061 was enacted to relieve the problems of separating possession and ownership considerations in cases involving land claimed by private interests in competition with the state, a municipality, town or village. 5 Tul.L.Rev. 665 *1345 (1931). The inference can be made from the repeal of La.R.S. 13:5061 coincident with the enactment of the Code of Civil Procedure and the possessory/petitory articles therein (one of which forbids the cumulation of possessory and petitory actions) that it was the Legislature's intent that the state thereafter be treated just as other private litigants in possessory and petitory actions.

THE NATURE OF POSSESSION AND THE POSSESSORY ACTION
Possession is defined in La.C.C. art. 3421 as "the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name...."
La.C.C. art. 3422 provides further: "Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess it." Comment (b) to this latter article underscores the distinction between acquiring possession and acquiring the right to possess.[9] Comment (b) provides in pertinent part:
Louisiana legislation and well-settled jurisprudence distinguish between possession, which is the exercise of factual authority over a thing, and the right to possess, which one may acquire by exercising such authority for over a year. See, e.g., R.C.C. (1870) Articles 3454(2) and 3455. See also Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975):
"For example, the word possession in Civil Code Articles 3426-3431, 3436-3438, means physical control over a thing that one has acquired with the intent to own it. (Possession as physical control leads, of course, to acquisitive prescription if it has the attributes required by Article 3487 of the Louisiana Civil Code of 1870.) This physical control alone, however, does not give rise to possessory protection or to acquisitive prescription. Possessory protection is predicated on acquisition of the right to possess. This right to possess is acquired by one who has been for a year in peaceable and uninterrupted possession of an estate. Civil Code Articles 3454(2), 3456; cf. id. Art. 3449(2)." ...
Once a person has possessed a corporeal thing, movable or immovable, in a manner which establishes a right to possession, and one's possession is subsequently disturbed in fact or in law, the Code of Civil Procedure provides a legal remedy.
La.C.C.P. art. 3655 provides:
The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted.
La.C.C.P. art. 3658 sets forth the requirements for maintaining a possessory action.
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.
These articles on possession and possessory actions do not prohibit a possessory action against the state. They are written in broad and general terms ("immovable property or a real right therein") and do not further define the kinds of immovable property which may or which may not be objects of possession, and later, of a possessory action.

*1346 THE NATURE OF CORPOREAL IMMOVABLES OWNED BY THE STATE
Things under Louisiana law are divided into "common, public and private; corporeals and incorporeals; and movables and immovables." La.C.C. art. 448. We are concerned with a corporeal immovable in this case and therefore address only the distinctions among the first three categories of things: common, public, and private.
Common Things
La.C.C. art. 449 provides: "Common things may not be owned by anyone. They are such as the air and the high seas that may be freely used by everyone comformably with the use for which nature has intended them."
Public Things
La.C.C. art. 450 provides:
Public things are owned by the state or its political subdivisions in their capacity as public persons.
Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial seas, and the seashore.
Public things that may belong to political subdivisions of the state are such as streets and public squares. (Emphasis provided.)
La.C.C. art. 452 provides:

Public things and common things are subject to public use in accordance with applicable laws and regulations. Everyone has the right to fish in the rivers, ports, roadsteads, and harbors, and the right to land on the seashore, to fish, to shelter himself, to moor ships, to dry nets, and the like, provided that he does not cause injury to the property of adjoining owners.
The seashore within the limits of a municipality is subject to its police power, and the public use is governed by municipal ordinances and regulations. (Emphasis provided.)
Private Things
La.C.C. art. 453 provides: "Private things are owned by individuals, other private persons, and by the state or its political subdivisions in their capacity as private persons." (Emphasis provided.) Additionally some private things may be subject to public use. La.C.C. art. 455 provides: "Private things may be subject to public use in accordance with law or by dedication."
As noted in the comment (c) of La.C.C. art. 450: "According to civilian theory, the state and its political subdivisions have dual personality. At times they act as public persons, that is, in a sovereign capacity, and at times as private persons, that is, as private citizens or corporations."
Property of the state, then, may be in the nature of public things or in the nature of private things. Public things are those held "out of commerce .... dedicated to public use, and held as a public trust, for public uses." City of New Orleans v. Carrollton Land Co., 131 La. 1092, 1095, 60 So. 695, 696 (1913).
Public things are inalienable under legislative and constitutional provisions. See generally comments, La.C.C. art. 450. The state constitution specifically designates certain public things as inalienable. La. Const. art. IX § 3 (bed of navigable water body); La. Const. art. IX § 4(A) (mineral rights on property sold by the state). Additionally the state constitution specifically provides that "no public property... shall be subject to seizure" (La. Const. art. XII § 10(C)) and that "[l]ands and mineral interest of the state ... shall not be lost by prescription" (La. Const. art. IX § 4(B)).
By contrast, private things of the state or its political subdivisions are alienable "in accordance with existing statutes and regulations." Wright v. Sabine River Authority, 308 So.2d 402 (La.App. 3rd Cir.), writ refused, 313 So.2d 245 (La.1975). Accord Anderson v. Thomas, 166 La. 512, 117 So. 573 (1928); Landry v. Council of Parish of East Baton Rouge, 220 So.2d 795 (La.App. 1st Cir.1969). Concerning private things *1347 generally, La.C.C. art. 454 provides that the "(o)wners of private things may freely dispose of them under modifications established by law." Comment (c) to this article states unequivocally: "Things belonging to the state, its political subdivisions, and agencies, may be disposed of in accordance with the applicable laws and regulations."

THE NATURE OF OBJECTS OF A POSSESSORY ACTION
Under French law, "[c]orporeal immovables can be the object of a possessory action bearing on the possession of the land itself only if they are in commerce and, as such, susceptible of being acquired by adverse possession (footnote omitted)." Aubry & Rau, 2 Civil Law TranslationsProperty § 185, 129 (7th ed. 1966). The key to the possession of corporeal immovables in France seems to lie in the land's being in commerce. Under the French scheme, if the corporeal immovables were in commerce, and as such, (i.e. because of their commercial availability) susceptible of being acquired by adverse possession, the land was equally amenable to being "the object of a possessory action bearing on the possession of the land." Thus it is not the ability to acquire by adverse possession that sets the stage for the availability of a possessory action; rather, by implication from French theory, it is the state of being "in commerce" which triggers the availability of the possessory action. The ability to acquire by adverse possession is only incidental to the requirement that the corporeal immovables be "in commerce."
Aubry & Rau supra illustrates those corporeal immovables which, at least under French law, are incapable of being possessed because they are not in commerce.
The following can not, for this reason, be protected by possessory actions: lands occupied by war fortifications, sea coast, national or departmental highways, local roads, public streets and squares, rights of way of navigation canals and artifical dikes of navigable rivers, cemeteries and churches. (Footnotes omitted)[10]
On the other hand according to the French commentators Aubry & Rau, corporeal immovables in the private domain, even those in the private domain of the state,[11] may be "object[s] of a possessory action bearing on the possession of the land itself," and "[t]his applies especially to sea relictions (lais et relais), and even river beds from which water has permanently receded were held to be relictions." (Footnotes omitted) (Emphasis provided) Aubry & Rau, supra at 130. Accord Planiol, I Civil Law Treatise, Part 2 §§ 3068A, 3082, at 816, 824 (1959).
The availability of a possessory action against corporeal immovables of the state, according to the French commentators, turns then on the classification of the corporeal immovable as either a public or private thing.[12]
*1348 Under our jurisprudence, a possessory action has not been allowed in regard to "public" property. Bruning v. City of New Orleans, 165 La. 511, 115 So. 733 (1926); Martin et al v. City of Lafayette, 162 La. 262, 110 So. 415 (1926).[13] In Bruning, 115 So. at 737 (on first rehearing), we framed the question concerning possession of private and public things as follows:
Suffice it to say that, if the property in controversy be of a nature subject to private ownership and exclusive private possession, then our former decree [enjoining the city from entering the land in dispute] is correct, and should be reinstated.
On the other hand, if the property in controversy be of that class of public things, "the property of which is vested in a whole nation, and the use of which is allowed to all (R.C.C. art. 453)," such as the seashore, being "that space of land, over which the waters of the sea spread in the highest water, during the winter season (R.C.C. art. 451)," or such as the streets and public squares of a city (R.C.C. art. 454), then mere physical possession thereof by a private individual "is not such a possession as entitles the possessor to maintain himself against the public until ousted by a petitory action; that the public is entitled to enter thereon at once." Martin v. City of Lafayette, 162 La. 262, 110 So. 415, and authorities there cited.
The same is also true of land actually covered by the waters of the sea (Milne v. Girodeau, 12 La. 324); nor does it make any difference that such land be uncovered even for whole seasons at a time, if in fact it be subject to periodical inundation by the regular rise or flow of the water at the appropriate season (Sapp v. Frazier, 51 La.Ann. 1718, 26 So. 378, 72 Am.St.Rep. 493).
On second rehearing in Bruning, we upheld the municipality's right to enter the lakefront property (rejecting the Brunings' possessory action) finding that "[n]o complaint, apparently, was ever made by plaintiff, by her husband, or by her sons, of the action of the authorities in consistently claiming and treating the property in dispute as a locus publicus." We reversed the earlier decision, however, insofar as "it purport[ed] to determine finally the ownership of the property." 115 So. at 738.
On the other hand when property is "private", a possessory action has been permitted. Moran v. City of New Orleans, 170 La. 499, 128 So. 290 (1930). In Moran, when the city sought to remove the plaintiff's wire fence and replace it with a board fence to exercise control over what the city alleged was "locus publicus," the plaintiff filed a possessory action to enjoin the city from interfering with her possession and control of the property. In upholding the plaintiff's right to be quieted in her possession of the property, this Court found:
The record shows that the property involved in this suit was subject to private ownership; that plaintiff was in the actual possession of it at the instant when the disturbance alleged in the petition occurred; that she had possessed the property quietly and without interruption, under a claim of ownership, for many years prior to the disturbance, and that defendant had never, theretofore, asserted claim to any part of it, or attempted to exercise any dominion over it.
The record does not show that the property involved was ever dedicated, by any of its former owners, to public uses.

*1349 A map and certain sales with reference thereto are relied upon as impliedly dedicating the property as a locus publicus, but no connection between the confection of the map and the owner of the property is shown. Hence, if the title to the property could be inquired into in this proceeding, we seriously question whether the offerings referred to could be given the effect contended for by defendant. 128 So. at 291.
Therefore while public things may not be objects of possession by private individuals, our jurisprudence, consistent with Louisiana's Civil Code and French theories, allows private things (the ownership of which is in dispute as between a private litigant and a sovereign) to be the objects of a possessory action. And our courts have awarded judgment favorable to the private litigant when the private nature of the property has been established and the plaintiff suing the sovereign has satisfied the other requirements for success in a possessory action. Moran, 128 So. 290. Thus, the success or failure of a possessory action against the state will depend in part on the judicial determination concerning the nature of the object of that possessory action, that is whether the property is public or private in nature.

THE INTERPLAY OF POSSESSION, THE POSSESSORY ACTION, AND ACQUISITIVE PRESCRIPTION
Notwithstanding the above, the state argues that the constitutional prohibition against the state's losing its lands (either public or private, A. Yiannopoulous, 2 La. Civ.Law Treatise § 34, 95 et seq. (1980)) through acquisitive prescription, prevents a possessor from having the requisite outset "intent to possess" state property and always bars a possessory action against the state, irrespective of the public or private nature of the property. The question thus becomes whether possession of land is so inextricably tied to the land's being subject to acquisitive prescription (upon a showing of adverse possession), that the legal inability to so acquire the property bars the kind of possession (i.e., with the intent to possess as owner) which is necessary to trigger the right to maintain a possessory action after a year of undisturbed possession. We find that the inability to acquire private property belonging to the state by acquisitive prescription does not bar a possessory action against the state.
Admittedly, the "intent to possess" in a possessory action has been found to be similar in nature to that required of a person seeking to acquire property by prescription. City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975 (La. 1982); Norton v. Addie, 337 So.2d 432 (La. 1976); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La. 1975); Note, 49 Tul.Law Review 1173 (1975). Admittedly, too, the possessory action is oftentimes but the "skirmishing ground for the impending contest as to ownership." Writ System in Real Actions, 22 Tul.Law Review 459 at 467 (1948). However, the fact that one action may in the usual course precede another does not mean that availability of the latter is a sine qua non of the former.
While the precept tantum praescriptum quantum possessum ("It is clear that I cannot acquire by prescription what I have not possessed." G. BaudryLacantinerie & Albert Tissier, 5 Civil Law Translations 298, 158 (4th Edition, 1924)) is indisputable, the reverse ("I cannot possess what I cannot acquire by prescription") is not necessarily true. It depends on the reason that the property is not subject to being acquired by prescription. On the one hand, if the state land cannot be acquired by prescription because it is inalienable, the land clearly cannot be the object of a possessory action since alienability (the state of being in commerce) is a prerequisite for such an action. This is exactly what prohibits the bringing of a possessory action when the object of that action is "public" land, which is inalienable. However if the state land *1350 cannot be acquired by prescription because of some reason other than its inalienability, then the principles of possession are not offended by the prohibition against acquisitive prescription.
As stated earlier, land which the state owns in its private capacity is alienable in accordance with applicable laws and regulations, and so is in commerce. What bars the prescriptive acquisition of land which the state owns in its private capacity is not the nature of the property, for the property is in commerce and thus alienable; but rather a constitutional prohibition expressly designed to prohibit the loss of state lands. Allowing a possessory action is not inimical to the public policy manifested through the constitutional prohibition because a private litigant cannot acquire ownership through the possessory action, nor will the state thus lose title to its lands should a litigant succeed against the state in a possessory action.
The availability of a possessory action then depends not upon whether the given property is subject to being acquired by adverse possession and prescription, but upon whether the property is of the sort which can be freely disposed of by individuals, by other private persons, or by the state in its capacity as a private person. This is akin to the French distinction that corporeal immovables can be objects of a possessory action if they are in commerce, irrespective of ownership. Therefore our civilian tradition as derived from the French does not foreclose an outset possessory action against the state.
It is only because of the constitutional prohibition against losing state lands by prescription, and our jurisprudence to the effect that the possession in a possessory action is of a kind similar to that required for acquisitive prescription that the argument is made that a possessory action is foreclosed at the outset against the state. The argument is not persuasive for the reasons which we will discuss in the next section of this opinion, and considering our resolution which makes the possessory action available without compromising the constitutional proscription to the running of prescription against the state.
If the land in dispute is public property which is not alienable (such as navigable waterbodies or dedicated public streets, for example), private individuals may not succeed in a possessory action against the state. On the other hand if the land in dispute is private in nature, subject perhaps to conflicting claims by private persons and/or the state in its private capacity, the constitutional prohibition against the state's losing lands by prescription does not preclude the availability of the possessory action against the state, with its focus simply upon whether or not the plaintiff has held himself out as owner for over a year.
Furthermore, referring to land as "public" at the outset of a possessory action in order to argue that it is inalienable, and may not be acquired by prescription, and thus cannot be the object of a possessory action, presupposes a state of affairs which may well not be the case. It presupposes that the property in question is owned by the state.
Only state lands may not be lost by prescription. Therefore, in order for the constitutional prohibition against losing lands by prescription to apply, there must be proof that the land in question is indeed state land. State of La. Dept. of Natural Resources, Div. of State Lands v. Talley, 413 So.2d 201 (La.App. 4th Cir.1982). Such proof of ownership is foreign to the limited issues in a possessory action. A party bringing a possessory action need not allege or prove that the property is not owned by the defendant, nor that he has title to the land; nor must the Court address the matter of ownership in order to rule in a possessory action.
The state, of course, will defeat the possessory action if they can show that the disputed property is "public," be it by nature or by use. La.C.C. arts. 450 and 455. *1351 The private litigant plaintiff otherwise entitled will succeed in the possessory action if the disputed property is shown to be "private" in nature, irrespective of whether the owner is ultimately found to be a private person or the state in its private capacity. La.C.C. art. 453. The possibility that in a later instituted petitory action or some other action (concursus for instance) the state may prove ownership of the property (and, as a consequence, the property's imprescriptible nature), is not offended by the outset availability of the possessory action in which ownership of the property is not at issue.
Additionally, the fact that it is later determined that the property may not be acquired by prescription (should it ultimately be shown that the state owns it) does not mean that the possessor did not "intend to possess" as owner.[14] There may be, as here, a legitimate dispute over the ownership of the property. See Esso Standard Oil Co. v. Jones, 233 La. 915, 98 So.2d 236 (1957). In this case, for instance, referring to the land in dispute as state land presupposes a determination not yet adjudicated, that the land in dispute is not accretion, as the plaintiffs suggest, but swamp overfill resting on the bed of a once navigable river. Such a determination will more properly be made in a petitory, or perhaps some other, action.

CONSEQUENCES OF MAINTAINING A POSSESSORY ACTION AGAINST THE STATE
The relief which may be granted a successful plaintiff in a possessory action is set forth in La.C.C.P. art. 3662 as follows:
A judgment rendered for the plaintiff in a possessory action shall:
(1) Recognize his right to the possession of the immovable property or real right therein, and restore him to possession thereof if he has been evicted, or maintain him in possession thereof if the disturbance has not been an eviction;
(2) Order the defendant to assert his adverse claim of ownership of the immovable property or real right therein in a petitory action to be filed within a delay to be fixed by the court not to exceed sixty days after the date the judgment becomes executory, or be precluded thereafter from asserting the ownership thereof, if the plaintiff has prayed for such relief; and
(3) Award him the damages to which he is entitled and which he has prayed for.

. . . . .
Certain of the advantages ascribed by law to the winner in a possessory action lawsuit are permissible when applied against the state.[15] There are, however, two distinct problems which arise as a result of a private plaintiff's winning a possessory action against the state. The first of these has to do with the type of burden which the state has to bear after losing a possessory lawsuit if it chooses to litigate the question of its ownership of the disputed land. The second problem has to do with whether or not the judicial directive La.C.C.P. art. 3662(2) to the losing litigant in a possessory action to file a petitory action within sixty days or be precluded thereafter from making an ownership claim to the property can apply to the state.
With respect to the former (the burden of proof when the state brings a petitory action or otherwise chooses to litigate its title), we make the following observations.
A private defendant/loser in a possessory action, as a plaintiff thereafter in the *1352 petitory action or other ownership contest or concursus proceeding, prior to 1981 had to "make out his title thereto." See La.C. C.P. art. 3653(1) (before amended in 1981) relative to proof of title in a petitory action when his opponent is in possession; and La.C.C.P. art. 3654(1) (before amended in 1981) relative to proof of title in an action for declaratory judgment, concursus, expropriation, or similar proceeding where the opponent would be entitled to possession in a possessory action. In Pure Oil Co. v. Skinner, 204 So.2d 797 (La.1974),[16] this Court decided that the charge to "make out his title thereto" required that the plaintiff "prove valid record title, ... show title good against the world without regard to the title of the party in possession." 294 So.2d at 799.
In 1981, Act No. 256, § 1 amended La.C. C.P. arts. 3653 and 3654 to substitute for "make out his title thereto" the clause "prove that he has acquired ownership from a previous owner or by acquisitive prescription". Given that state of affairs today, a private litigant in a petitory action must "prove that he has acquired ownership from a previous owner or by acquisitive prescription," if his opponent is in possession.
Just what the burden would be upon the state in a petitory or other ownership action under La.C.C.P. arts. 3653 and 3654 as amended, is not entirely clear. No doubt the state in the petitory proceeding would point to the fact that unlike a private litigant, the state may derive title or ownership not simply by acquisition from a previous owner and/or by prescription[17] but, as well, in other ways, not the least of which is the ownership of lands at the state's inception. See generally 27 Tul.L.Rev. 59 (1952). Just what burden of proof will be required of the state in a subsequent action to establish its ownership is not before us at this time, in this case. And we need not decide it now.[18]
With respect to the latter concern about the option available to the plaintiff in La.C. C.P. art. 3662(2), to have the judge set a deadline not to exceed sixty days within which the defendant/loser in a possessory action must bring his petitory action, there is constitutional and legal reason to bar application to the state of that provision. This reason is based partly on the public policy consideration attending the Constitution's prohibiting the loss of state lands by acquisition prescription. More pointedly, however, it is based on the constitutional proscription to the running of liberative prescription against the state, a provision which has been incorporated in our state constitutions since 1898. "Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." La. Const. art. 12 § 13, La. Const. art. 19 § 16 (1921), La. Const. art. 193 (1913 and 1898).
The sixty day period in La.C.C.P. art. 3662(2), within which the trial judge when asked must tell the loser in a possessory action to file a petitory action, fits indeed within the parameters of liberative prescription. *1353 This sixty (60) day period finds its source in the jactitory action, a jurisprudentially-created action which subsisted as a way of handling slander of title actions. International Paper Co. v. Louisiana Central Lumber Co., 202 La. 621, 639, 12 So.2d 659 (1943); Siegel v. Helis, 186 La. 506, 172 So. 768 (1937) and cases cited therein at 172 So. at 771; Packwood v. Dorsey, 4 La.Ann. 90 (1849). In 1960 with the adoption of the Louisiana Code of Civil Procedure, the former jactitory action was merged with the former possessory action. 35 Tul.L.Rev. 541 (1961). That the sixty day period is a form of liberative prescription[19] is evident from jurisprudential history of the jactitory action.[20]Siegel, 172 So. 771, Packwood, 4 La.Ann. 90.
To give effect to La.C.C.P. art. 3662(2) and the sixty day period when the state is the loser in a possessory action would impose on the state a form of liberative prescription, which is constitutionally impermissible under La. Const. art. 12 § 13. "Prescription shall not run against the stae in any civil matter, unless otherwise provided in the constitution or expressly by law." Nowhere in the constitution, nor expressly in La.C.C.P. art. 3662(2) or any other statute is there provision for the sixty day period to run against the state. Yet as we have indicated earlier in this opinion the possessory action, as jurisprudentially permitted against the sovereign, insofar as private property is concerned, fits clearly within the codal scheme of the property articles of the Civil Code, and is consistent with our French tradition as well. Therefore, allowing a private litigant to maintain a possessory action against the state is statutorily, constitutionally and jurisprudentially supported; although the sixty day mandate in La.C.C.P. art. 3662(2) for bringing a petitory action, as applied to the state, is constitutionally impermissible.
Our pretermitting the question as to the extent of the state's burden as plaintiff in a petitory or other action after defeat in a possessory action, and our deciding that the sixty day period, whether peremptive or prescriptive, is unconstitutional as applied to the state, answers a serious argument against permitting the possessory action against the state. That argument is based upon public policy. It is suggested that there is untold property or acreage which the state owns or may own which is exposed to loss to possessors, notwithstanding the constitutional proscription to the state's losing lands by acquisitive prescription. Under our resolution of the matter before us, no state lands are open to loss by prescription. The possessor simply can never acquire title by prescription. The state will not lose its lands by a failure on the part of its agents to act within a certain time frame because La.C.C.P. art. 3663(2)'s limitation is unconstitutional as applied to the state and therefore of no force and effect.
*1354 Therefore, for all of the foregoing reasons, we find that a possessory action may be maintained against the state. We affirm its availability, except that the plaintiff's option in La.C.C.P. art. 3663(2) to ask the judge to require in the judgment that the defendant file a petitory action within a stated period not to exceed sixty days is not constitutionally permissible when the state is the loser in the possessory action. Additionally we add a caveat (acknowledging that the issue is not before us in this case) that we have not determined what the state's burden of proof will be, if and when, after losing a possessory action to a private litigant, the state seeks to assert its ownership in a petitory or other proceeding.

CONCLUSION
Having determined that a possessory action is available when its object is a private thing, even where an opposing claim is made by the sovereign, we turn to the particular circumstances of the matter before us.
In this case, the land in dispute is either the former bed and bottom of the Mississippi River, or land formed by accretion, alluvion, derelicition or reliction. In either case, the land in dispute is a "private thing." The beds of formerly navigable waterbodies are private things of the state. Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922); A. Yiannopoulous, 2 La. Civ.Law Treatise § 46, 132 (1980). Lands formed by accretion, alluvion, dereliction or reliction are privately owned by the riparian landowners. La.C.C. art. 499. The land in dispute, being a private thing may, then, be the object of a possessory action. The exception of no cause of action was properly overruled.
In deciding the possession issue, the trial judge referred to the disputed area as accretion, a matter which he did not have to resolve at this stage of the litigation because the question involves ownership considerations and is to be decided conclusively in the petitory or later real action, and which the Court of Appeal properly pretermitted. Secondly, and more significantly for our purposes, the trial judge found that the plaintiffs had proven their possession of the disputed area of land itself. Proof of the plaintiffs' possession included timber cutting, providing for timber management, execution of hunting leases over periods of time and the building and maintaining of fences. Occasional hunting by the general public did not establish the state's possession, nor were there established any earlier interruptions of the plaintiffs' possession for one year preceding the state's halting of Stevens' timber operations.
The Court of Appeal found it unnecessary to decide whether the land in dispute was formed by accretion or from swamp overfill, since it found that such questions are more properly to be addressed in the petitory action. The Court of Appeal, however, affirmed the trial court's decision that the plaintiffs had enjoyed over one year of uninterrupted and peaceable possession of the disputed tract immediately preceding the state's disturbance. The Court of Appeal stated at 422 So.2d at 1355:
We agree that plaintiffs possessed by their acts on the disputed tract itself. We, therefore, do not reach the question of civil possession of accretion by actions on an adjoining riparian tract only.
Defendant next argues that the State maintained possession of the disputed tract through corporeal possession of portions of the old river bed. However, we agree with the finding that plaintiffs have sufficiently proven that they possessed the property for one year prior to the disturbance, through the following acts: cutting of timber from 1957 to 1962, negotiating a hunting lease requiring the construction of a fence, cutting of timber in the 1930's and the 1950's, establishing a timber management program, conducting timber-cruises, execution of grazing leases, and the sale of a portion of the land to the U.S. Government *1355 in which the State was not made a party to the condemnation.
Once the plaintiffs are found to have possession, that possession continues until another forcibly expels them or they permit the property to be usurped and held for more than one year. La. Civil Code Art. 3449; Liner v. Louisiana Land & Exploration Company, 319 So.2d 766 (La.1975). Seasonal hunting by the public on the disputed tract was inadequate to establish corporeal possession in the State or to usurp plaintiffs' possession. Norton v. Addie, 337 So.2d 432 (La.1976). Plaintiffs filed this possessory action in response to the one time that the State halted timber operations on the disputed tract. The camp-site leases granted by the State were outside of the disputed tract. Defendant has not shown that plaintiffs have been expelled, or have acquiesced in a usurpation.
We agree with the Court of Appeal. Whether the land was or was not formed by accretion affects ownership, and is properly pretermitted, to be determined only in connection with a later filed petitory or other action. As discussed earlier we have found that a possessory action is available in this case, given the private nature of the land in dispute, even should its ownership ultimately be found to rest in the state. Finally, the record contains sufficient proof of plaintiffs' peaceable and uninterrupted possession for over a year prior to the disturbance by the state. For the reasons stated more fully above, the only impermissible portion of the judgment below was that ordering the state to bring a petitory action within sixty days (paragraph five of the district court judgment).

Decree
For the foregoing reasons, the lower courts' judgments are affirmed except insofar as they "order [the state] to bring a petitory action against the plaintiffs to assert any claim of ownership that [the state] has to the property ... within sixty (60) days after this judgment becomes executory or be precluded thereafter from asserting the ownership thereof."
JUDGMENT AMENDED; OTHERWISE AFFIRMED.
DIXON, C.J., dissents with reasons.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The acquisition of the right to possess is itself a kind of prescription (See C.C. 3422)[1] which cannot run against the state. Constitution article 12, § 13[2] and Constitution article 9, § 4(B)[3].
The right to possess makes the possessor the presumptive owner. C.C. 3423.[4] He acquires the ownership of all the fruits, if he is in good faith. If he has made a construction on the land of another, the owner must repay him the cost, their current value, or the enhanced value of the immovable. C.C. 496. Above all, the possessor acquires the exclusive right to possess, even against the true owner. C.C. 3423.
These benefits of ownership are substantial rights which the state would lose by prescription to a possessor.
*1356 The strong public policy in Louisiana which prohibits the loss of state lands and mineral interests by prescription is grounded in said experience and long history. The wealth of the state in lands and minerals is the property of the people of the state. The state itself, in the past, has been powerless to protect itself against loss of its assets to people who see no moral wrong in taking property which is not in use and which belongs to no one except the state, an entity with no face, no soul and little personality.
The better policy, which would comply with the clearly stated intentions of constitutional provisions, would be to require a plaintiff who claims the right to possess against the state, to prove that the state did not own the land. This requirement should be enforced, whether the land is said to be owned by the state in its "private" capacity or "public" capacity. In the case before us, the plaintiff in a possessory action sues the state, claiming an interest adverse to the state. The plaintiff should be required to prove, before he can maintain this action, that the land is not owned by the state. Only then does the Constitution permit the acquisition of ownership or right of possession. The Constitution does not permit the acquisition by prescription of property belonging to the state.
MARCUS, Justice (dissenting).
I consider that the state constitutional provisions against the running of prescription against the state and against the state's losing land by prescription bar a possessory action against the state. Accordingly, I respectfully dissent.

ON REHEARING
BLANCHE, Justice.
The primary issue of law presented by this case remains that of whether an individual may successfully maintain a possessory action against the state.

PURPOSE OF THE POSSESSORY ACTION
The question posed for our decision is one of first impression and cannot be resolved without a full exploration of the legal principles which are the basis of the possessory action. A careful review of the law governing the possessory action leads us to the conclusion that the purpose of this action is to protect the presumption of ownership which forms the basis of acquisitive prescription.
The first indication of the nature and purpose of the possessory action comes from the location in the Civil Code of the articles dealing with possession. These articles are found in Title XXIII, "Occupancy and Possession," in Book III of the Civil Code: "Modes of Acquiring Ownership of Things." The Civil Code is not a series of disjointed, isolated statutes. Rather, it is a unified whole, divided into three distinct parts: books on persons, things, and the various means of acquiring the ownership of things. Further, the Civil Code directs that laws in pari materia must be read and construed together. La.C.C. art. 17. The fact that the articles on possession and the possessory action are located in that Book of the Code which deals with the acquisition of ownership is the first indication that the purpose of the possessory action is to protect that possession which leads to or forms the basis of ownership.
This preliminary indication is confirmed by an examination of who may bring the action. It has long been held that the possession required to bring the possessory action is the same as that required to commence the running of acquisitive prescription. See, Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975), and cases cited therein; see also, Riseman, The Possessory Action in Louisiana, 20 Tul.L.Rev. 524 (1946). And, according to the Civil Code, two things are required to acquire that possession which will support prescription, and, *1357 therefore, the possessory action. One requisite, of course, is corporeal possession, but the Code also states that, "[t]o acquire possession, one must intend to possess as owner ..." La.C.C. art. 3424 (1982) (emphasis added.)[1]
A third indication of the purpose of the possessory action comes from reading Civil Code articles 3423 and 3427 together:
Art. 3423. A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established.
Art. 3427. One is presumed to intend to possess as owner unless he began to possess in the name of and for another.
Thus, one entitled to bring the possessory action is given the benefit of the presumption that he owns the property in question. The importance of this presumption cannot be over-emphasized, for it can only be rebutted by proof of ownership of another and it becomes a legal conclusion upon the passage of the requisite period of time necessary for acquisitive prescription.
The final element to be considered in a determination of the purpose of the possessory action is the remedy or protection afforded a successful plaintiff in a possessory action. All possessors, whether in good faith or bad, whether in possession for more than a year or less, have certain rights which are governed by Civil Code articles 486-488 and 496-497, but these articles deal only with ownership of things accessory to immovable property, not with real rights in the immovable itself, and may be asserted without bringing the possessory action. The successful plaintiff in a possessory action, however, is entitled to restoration of his possession if he has been evicted or to be maintained in his possession if there has been a disturbance, but no eviction. Moreover, he may require the defendant in the possessory action to assert his claim of ownership in a petitory action within no more than sixty days from the time judgment in the possessory action becomes executory or be forever precluded from bringing such a claim. La.C.C.P. art. 3662. Furthermore, as now stated by Civil Code article 3422, one who proves factual possession as owner for over a year "acquires the right to possess it."[2]
This "right to possess" is a right which has as a corollary a universal obligation; everyone, even the true owner, must respect the possessor's right to continue in his quiet possession. From this recognition of "the right to possess" flows perhaps the most important legal benefit to the successful plaintiff in a possessory action: In a petitory action against one whose right to possess has been proved, the plaintiff bears the burden of proving title "good against the world." Through the possessory action, the law will protect and preserve possession so that title may be made secure through prescription, and the only way to rebut the presumption of ownership in one who has proved his right to possess is through a petitory action in which the plaintiff must first make out his own title. La.C.C.P. art. 3653; See also, Aubry & Rau, Droit Civil Francais, Vol. II, § 182 (ed. P. Eisman, 1961) (trans., La.State Civil Law Institute, 1966); and, M. Planiol, Traité Élémentaire De Droit Civil, Vol 1 Part 2, § 2286 (trans., La.State Law Institute, 1959).
*1358 To summarize, the Civil Code articles dealing with the possessory action are located in Book III, "Modes of Acquiring Ownership of Things"; one who brings the possessory action must prove, inter alia, intent to possess for himself as owner; the possessor is presumed to possess for himself and is considered the owner until another proves title in himself; one who proves his "right to possess" through the possessory action may assert that right against the entire world; and, finally, the "right to possess" establishes an even firmer presumption of ownership which is rebutted only by another's proof of perfect title in himself. From all of this it becomes clear that the possessory action and acquisitive prescription are intimately connected. Indeed, the purpose of the possessory action is to protect that presumption of ownership which forms the basis of acquisitive prescription and which becomes a conclusion upon the passage of time necessary for the accrual of acquisitive prescription.

DISTINCTION BETWEEN PUBLIC AND PRIVATE PROPERTY INAPPLICABLE
Having determined that the purpose of the possessory action is to protect the accrual of acquisitive prescription by establishing the right to possess, we may now consider whether that action is available against the State.
The plaintiff and amicus curiae are correct in their assertion that French doctrinal authorities uniformly recognize that a possessory action may lie against private property of the state, though not against public property. Although this differentiation between public and private property of the State is appropriate in France, the same is not true in Louisiana. The reasons for this become apparent when one compares French statutory law with the Louisiana Constitution.
The Louisiana Civil Code is similar to that of France in that certain properties are designated as "public" property of the state. C.C. art. 450. Perhaps the most important characteristic of public property is its inalienability. The reason property held by the state as custodian for the public was defined by law and declared inalienable was to protect against private encroachment or governmental inefficiency as regards property held by the state for the public's benefit. M. Planiol, supra, § 3068. Property which is inalienable is considered to be "out of commerce," and the characteristic of imprescriptibility of public property in France flowed from that of inalienability, for Art. 2226 of the French Civil Code provides that prescription cannot run against property which is out of commerce:
Art. 2226. On ne peut prescrire le domaine des choses qui ne sont point dans le commerce.[3]
Other than the limitation that prescription cannot run against property which is inalienable, or "out of commerce," the French Civil Code provides that prescription applies to the state as it does to any individual:
Art. 2227. L'État, les établissements publics et les communes sont soumis aux memes prescriptions que les particuliers, et peuvent également les opposer.[4]
In France, therefore, public property is imprescriptible and cannot be the object of a possessory action only because prescription cannot run against things out of commerce. See, Aubry & Rau, supra, § 185. *1359 Private property of the state, however, is subject to acquisitive prescription and thus may be the object of possessory action.
The same simply is not true in Louisiana. The position of the French authorities is based upon a statutory scheme which is diametrically opposed to that of Louisiana. In contrast to the French Civil Code which states that prescription runs against the State as to everything except inalienable property, the Louisiana Constitution prohibits the application of prescription against the State:
Prescription shall not run against the state in any civil matter unless otherwise provided in this constitution or expressly by law. La. Const. art. 12, § 13 (1974).
Thus, neither public nor private property of the State of Louisiana may be acquired through prescription.
It follows, then, that since the purpose of the possessory action is to protect the possessor's presumption of ownership as acquisitive prescription accrues, the action must be unavailable where property of the state is its object. Since state property can never be acquired prescriptively, it would be a useless exercise first to give judicial recognition to a plaintiff's right to possess against the state and then later tell him that his possession will never be sufficient to acquire ownership.
Finally, it is contended that the prohibition of the possessory action against the State is to sanction the wrongful interference by the State of one's peaceful possession of his property. This assertion overlooks the other remedies at law available to an owner to protect the peaceful possession of his property whether disturbed by the State or any other person. More importantly, it misconceives the true objective of the possessory action; namely, to protect one good faith possession of property as prescription accrues while at the same time retaining the ownership of all the fruits produced therefrom. C.C. Art. 551.
The strong public policy of the state is to protect the wealth of its lands and minerals, all of which reside in the people of this State. This policy would not be served by creating a distinction between public things and private things and permitting prescription against the State depending upon the nature of the State's ownership. The better policy is to protect all state lands from acquisition through prescription however owned and all as expressed in the constitutional article on which this opinion is premised. Louisiana Constitutional Art. 12, § 13 (1974).
Accordingly, one does not have a cause of action to maintain a possessory action against the State because one can never acquire ownership of State lands simply through possession.

CHANEY V. STATE MINERAL BOARD
Chaney was consolidated with this case and a decision was rendered therein on December 19, 1983, and is reported at 444 So.2d 105 (La.1983). That decision relied on Todd (on original hearing), and stated that:
For the reasons discussed more fully in Todd, a possessory action may be maintained against the state. Corporeal immovables capable of being privately owned may be the object of a possessory action. Because the state may own private things in its capacity as a private person, a possessory action may be maintained against it. Id. at 106.
Our reversal of the Court of Appeal in upholding the judgment of the District Court is maintained but for reasons as fully expressed herein.

DECREE
For the above and foregoing reasons, the lower courts' judgments are reversed and judgment is rendered herein in favor of the State of Louisiana and against the plaintiffs dismissing their suit at plaintiffs' costs.
REVERSED
*1360 CALOGERO, J., dissents. I would reinstate the majority opinion on original hearing.
DENNIS, J., dissents with reasons.
WATSON, J., dissents, believing the opinion on original hearing to be correct.
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority opinion adds an unnecessary judicial gloss to our state constitution which usurps the legislature's policy-making function and hampers its ability to adopt future laws regulating possessory actions. The provision of the Louisiana constitution upon which the majority premises its holding is Article XII, Section 13. As drafted by the delegates to the constitutional convention, the provision merely prevented the running of prescription against the State in civil matters. As amended by the bracketed words which, in effect, have been added by the majority, the provision now reads:
Prescription shall not run [nor shall the possessory action lie] against the State in any civil matter unless otherwise provided in this constitution or expressly by law.
There is no foundation in the words of the constitution or the convention proceedings for this interpretation. VII Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 1566-1572.
I agree that the possessory action and acquisitive prescription are intimately related. But this relationship is not a basis for concluding that a prohibition with respect to the latter governs the former. The accruing of prescription results in an acquisition of ownership, not possession or the right to possess. Ownership and possession are distinct. Compare La.C.C. arts. 477 and 3421. The right to possess is protected by the possessory action not merely for protection of the presumption of ownership inherent in possession, but also for protection of all rights attending possession. These rights include (1) present authority to detain and enjoy (until adverse ownership is proven), La.C.C. arts. 3421, 3422; (2) transferability for value or otherwise, La.C.C. 3441; (3) ownership of fruits gathered during possession and works built on the property possessed, La.C.C. arts. 485-486, 496-497; (4) reimbursement for expenses incurred by the possessor which inure to the owner's benefit, id., La.C.C. arts. 527-528; (5) and the right to maintain possession until the owner fully reimburses the possessor, La.C.C. 529. These rights attend the fact of possession and demonstrate that it has significance independent of its status as an inchoate prescriptive right. The majority ignores this significance and reduces possession to a mere precondition to acquisitive prescription. I see no reason to conclude that the possessory action protects only the presumption of ownership and not these other possessory rights. Even if I could agree with the majority's assertion on this point, I still would not see why a prohibition with respect to prescription is relevant to the issue at hand, since acquisitive prescription is an ownership issue expressly removed from judicial consideration in a possessory action. La.C.C.P. art. 3661.
I believe that an unspoken concern underlying the majority's opinion is fear of the potential loss of valuable minerals by the State to adverse possessors. This concern is largely unfounded. Minerals are products of the land, rather than fruits. Logan v. State Gravel Co., 158 La. 105, 103 So. 526 (1925); Jackson v. Shaw, 151 La. 795, 92 So. 339 (1922); Elder v. Ellerbe, 135 La. 990, 66 So. 337 (1914). See La.C.C. art. 488, Official Revision Comments. Upon proof of its ownership, the State is entitled to a full accounting for any minerals produced by the possessor. Civil Code article 488 provides:
Products derived from a thing as a result of diminution of its substance belong to the owner of that thing. When they are *1361 reclaimed by the owner, a possessor in good faith has the right to reimbursement of his expenses. A possessor in bad faith does not have this right. (Emphasis added).
Since the State's mineral interests are adequately protected under Louisiana law already, there is no policy reason to treat the State preferentially. Thus, there is no foundation in law or policy for the Court's decision in this case. See Symeonides, Developments in the Law, 1982-1983Property, 44 La.L.Rev. 505, 505-513 (1983).
NOTES
[1] Chaney v. State Mineral Board of Louisiana, 433 So.2d 712, was consolidated with this case for the purpose of briefing and argument, on the question of the availability of a possessory action against the state. Chaney, which involves an additional issue, has not yet been decided by this Court.
[2] An outline map of the area in question shows the following:
[3] Reports at the time stated that within two days of the cut, the River's current had deepened the channel to allow the free flow of river traffic over what had formerly been the isthmus connecting Turnbull Island to the east bank of the Mississippi River.
[4] To complete the geographical picture of the area: what was formerly the southern half of the Mississippi River's loop around Turnbull Island was and is called Lower Old River and still connects at the east with the River. The Red River is the island's boundary to the west and joins at the southwestern tip of Turnbull Island with the Atchafalaya River at its point of origin and with Lower Old River.
[5] At the time suit was filed House Concurrent Resolution No. 82 of 1979 authorized suit against the State of Louisiana by Robert Bradley Todd, Charles Frank Haynes, Jr., and A.B. Stevens to "prosecute any suit now pending, against the state of Louisiana, through the Department of Natural Resources and/or the State Mineral Board on a claim of ownership and/or possession of former or present water bottoms and minerals associated with said bottoms adjacent to Turnbull Island, portions of said island being located in West Feliciana, Concordia and Avoyelles Parishes." Later Concurrent Resolution No. 253 of 1980 amended and supplemented HCR No. 82 so as to add the word "timber" between the words "water bottoms" and "minerals."
[6] The basis for the other exception of no right of action was that the disturbance alleged in plaintiff's petition related solely to the disturbance of the timber estate within the possession of Stevens, the timber owner, and not that of the landowner. Additionally the peremptory exception of sovereign immunity alleged that HCR No. 82 did not authorize suit against the state for disturbance of the timber estate but only authorized suit for possession/ownership of the former or present waterbottom of the Mississippi River. In overruling these exceptions, the trial judge found the landowner, as well as the timberowner, was disturbed by the state's action, and that HCR No. 253 had satisfied the requirement that there be legislative authorization to sue. See note 3, supra.
[7] La.C.C.P. arts. 3651 through 3664 in Title II, Real Actions, Chapter 1, "Actions to Determine Ownership or Possession," of the Louisiana Code of Civil Procedure relate to the possessory and petitory actions. Essentially those articles set forth a comprehensive scheme by which possession and ownership of land is established.
[8] Act 82 of 1930 which became La.R.S. 13:5061 in the Revised Statutes of 1950 was repealed by Act 32 of 1960 at the time of passage of Act 15 of 1960 which adopted the Louisiana Code of Civil Procedure.
[9] To acquire possession, one need simply intend to possess as owner and take corporeal possession of the thing [La.C.C. art. 3424] whereas the right to possess, or to maintain a possessory action involves, additionally, peaceable and uninterrupted possession for a year.
[10] These examples from the French are similar in nature to the classification of public things, and private things subject to public use, in the Louisiana Civil Code. La.C.C. arts. 450, 452, 455.
[11] In France, immovables in private domain of the state are in commerce and can be acquired by adverse possession. Aubry & Rau, supra at 130. Therefore the sovereign is subject to being sued by a private interest in a possessory action.

Additionally, even if there is question as to the nature of the property, Aubry & Rau notes a possessory action might be maintained even against property in the public domain:
[W]e must admit that since trees and hedges planted on public domain are susceptible of an appropriation independent from the ownership of the land, a possessory action by a private person against a municipality for the purpose of retaining the possession of a hedge planted on municipal land can not be denied on grounds that the land is imprescriptible as part of the public domain. (Footnotes omitted.) Supra at 136.
[12] Arguably Louisiana's constitutional prohibition against the state's losing land, private or public, by prescription, distinguishes our law from the French (See Aubry & Rau, supra at 130: "Immovables in private domain of the state ... can be acquired by adverse possession.") However, as we discuss more fully hereinafter in this opinion, this inability to acquire by prescription does not foreclose the availability of a possessory action. The constitutional prohibition against the running of prescription against the state only limits somewhat the otherwise applicable procedural possessory/petitory scheme.
[13] But see Parkway Development Corporation v. City of Shreveport, 342 So.2d 151 (La.1977), in which a railroad company and its lessee were permitted to file a possessory action against a municipality in a dispute involving public property. The Court pretermitted the question of whether suit against public property itself was permissible, finding the object of the possessory action was not the public land itself but rather simply the right to occupy and use the public land, a right which had been expressly granted to the litigants by the municipality.
[14] This case involves good faith possessors who claim to possess as owners through title and accretion. We do not have here a bad faith possessor asserting a possessory action against the state.
[15] A possessor may seek reimbursement for certain expenses and improvements, may retain the thing itself until reimbursed, and if in good faith may retain the fruits of the things possessed. La.C.C. art. 485, 486, 488, 527, 528, 529; La.C.C., art. 3423, comment (b).
[16] Pure Oil Co. v. Skinner, 294 So.2d 797 (La. 1974), was a concursus proceeding instituted by Pure Oil Co. as owner of oil, gas and mineral leases to property over which two claimants were disputing. As one of the claimants was clearly in possession, the other had to "make out his title" under La.C.C.P. art. 3654.
[17] Lincoln Parish School Board v. Ruston College, 162 So.2d 419, writ denied, 246 La. 355, 164 So.2d 354 (1964).
[18] Even if this Court were to decide later that the state, just like the private litigant in Pure Oil v. Skinner, has a heavy burden in a petitory action or other real action involving the ownership of property, following an unfavorable judgment in a possessory action (and this is mere speculation at this point), it is worth noting that the Legislature has it within its power to adopt the statute, La.R.S. 13:5061 which prevailed between 1930 and 1960. Under La.R.S. 13:5061 as quoted in full earlier in this opinion, the plaintiff in a possessory action against the state must couple such action with a petitory action. Therefore the burden of proving title would rest on that party as plaintiff, rather than on the state as defendant.
[19] Sometimes this sixty day period has been called peremptive. Collier v. Marks, 220 La. 521, 57 So.2d 43 (1952). Canada v. Frost Lumber Industries, 9 So.2d 338 (La.App.2d Cir.1942). Such classification does not change the legal reasoning in this case. In Flowers v. Rausch, 364 So.2d 928, 931 (La.1978), we determined that "peremption, but a form of prescription, does `not run against the state in any civil matter, unless otherwise provided in the constitution or expressly by law.' La. Const. art. 12 § 13."
[20] The origin of the jactitory action was summarized in Packwood v. Dorsey, 4 La.Ann 90 at 93 (1849) as follows:

[I]n Spain judges were in the habit of fixing a term within which a person setting up a title to property in the possession of another was bound to institute his suit, under the penalty of perpetual silence.... It appears that these judgments rested for their legality upon no legislative sanction, nor any recognized principle of the civil law, but entirely on an extension of a law of the Code of Justinian known as the law Diffamari. By this law, whoever defamed the condition of a person born free, could be compelled to exhibit his proofs and make them good in a court of justice, and in default thereof be condemned to perpetual silence in relation to the slander. The dignity which the law attached to the condition of a Roman citizen, and the protection which it threw over the personal rights of all those subject to its dominion, explain at once the purpose and policy of this salutary provision.
[1] "Possession is a matter of fact; nevertheless, one who has possessed a thing for over a year acquires the right to possess it." C.C. 3422.
[2] "Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." Art. 12, § 13, La. Const.1974.
[3] "Lands and mineral interests of the state, of a school board, or of a levee district shall not be lost by prescription." Art. 9, § 4(B), La. Const. 1974.
[4] "A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established." C.C. 3423.
[1] Although this action was filed prior to the effective date of the 1982 revision of the Civil Code and would therefore be governed by substantive law in effect at the time of filing, for purposes of clarity and further application this opinion will refer to Code articles as revised where there has been no change in the law or significant change of language. Where the old and new articles differ, of course, the change will be pointed out and the case governed by the law in effect at the time suit was filed.
[2] La.C.C. art. 3422 (1982) is new, but does not change the law; it is merely a concise statutory declaration of the law contained in prior legislation and well-settled jurisprudence. See, Comments, La.C.C. art. 3422 (1982).
[3] Translated, the article reads:

Prescription cannot be set up against the property in things which are not the objects of commerce.
Art. 2226, Code Napoleon (trans., A Barrister of the Inner Temple, 1960 reprint).
[4] Translated, the article reads:

The nation, public establishments, and communes, are subjected to prescription equally with private persons, and may plead it in like manner.
Art. 2227, Code Napoleon (trans., A Barrister of the Inner Temple, 1960 reprint).